Jennifer BAKER, a minor, by her parent and natural guardian, Susan M. Baker, and Susan M. Baker, Individually, Appellants,

v.

OUTBOARD MARINE CORP., Defendant and Third-Party Plaintiff,

v.

Anna F. PENTZ, Clarence L. Weller and Betty I. Weller, his wife, and Clarence L. Weller, d/b/a Weller's Garage, Third-Party Defendants.

No. 78–2059.

United States Court of Appeals, Third Circuit.

Argued Jan. 9, 1979.

Decided March 23, 1979.

Richard C. Angino, Hurwitz, Klein, Benjamin & Angino, Harrisburg, Pa., for appellants.

William D. Boswell, Berman, Boswell, Snyder & Tintner, Harrisburg, Pa., for defendants.

Before HUNTER and GARTH, Circuit Judges, and LAYTON,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This appeal concerns the propriety under Pennsylvania law of two aspects of a district court's jury charge in a products liability case. First, relying on the specific language of section 402A of the Restatement of Torts, the court repeatedly stated that, for the defendant Outboard Marine Corporation to be held liable for damages to the plaintiffs, Jennifer and Susan Baker, the jury must find that a lawn mower manufactured by Outboard was "defective *and unreasonably dangerous.*" (emphasis added). Second, the court declined to inform the jury that for a third party's negligent acts to constitute intervening cause suffi-

cient to shield Outboard from liability to the Bakers, those acts must be "so extraordinary as not to have been reasonably foreseeable."

The jury entered a verdict in favor of Outboard, and the Bakers' motion for a new trial was denied. On appeal, the Bakers claim, *inter alia*,[1] that the district court's use of the "defective and unreasonably dangerous" instruction is prohibited by the Pennsylvania Supreme Court's recent decision in *Azzarello v. Black Brothers Co.*, 480 Pa. 547, 391 A.2d 1020 (1978). In addition, the Bakers contend that the court's instruction regarding third party negligence and intervening cause was inconsistent with this Court's holding in *Eshbach v. W. T. Grant's & Co.*, 481 F.2d 940, 944–45 (3d Cir. 1973). We agree with the Bakers that the district court's use of the phrase "unreasonably dangerous" was contrary to the rule established by *Azzarello*. As a result, we reverse the district court's order denying the Bakers' new trial motion and remand the case to the district court for a new trial. In addition, because the issue of intervening causation is likely to arise again in the new trial, it is appropriate to observe that the court's failure to give an instruction on third party negligence consistent with our holding in *Eshbach* was also error.

## I

## FACTS

Outboard manufactures lawn mowers, including the Lawn Boy 30-inch riding rotary

---

* Honorable Caleb R. Layton, 3rd, United States District Judge for the District of Delaware, sitting by designation.

1. The Bakers also claim: (1) that the district court erred in taking from the jury the issue of increased injury to Jennifer Baker by failing to give the jury an instruction on the increased or enhanced injury theory; (2) that the court erred in refusing to instruct the jury that under Pennsylvania law, a manufacturer is effectively the guarantor of his product's safety; (3) that the court erred in failing to direct a verdict in their favor on the issue of defective design. Because we hold that a new trial is warranted on other grounds, we need not decide whether the court's failure to instruct on the enhanced injury theory or its refusal to state that Outboard was the guarantor of its product's safety

constituted reversible error under all the circumstances of this case. We note, however, that if plaintiffs produce evidence at the new trial on the basis of which the jury could find that Jennifer's injury was enhanced by a defect or defects in the mower, plaintiffs will then be entitled to an appropriate instruction on enhanced injury. *See Huddell v. Levin*, 537 F.2d 726 (3d Cir. 1976). In addition, based on our review of the record, we conclude that Outboard presented "sufficient competent oral testimony", *Lazarus v. Goodman*, 412 Pa. 442, 446, 195 A.2d 90 (1963), that the mower was not defectively designed. As a result, the district court properly denied the Bakers' motion for a directed verdict on the question of defective design.

mower. One such Lawn Boy mower was owned by Clarence L. Weller, the father of plaintiff-appellant Susan Baker and the grandfather of plaintiff-appellant Jennifer Baker. On April 12, 1974, Susan and Jennifer, who was then 18 months old, and Susan's sister, Mrs. Anna Pentz, were visiting Clarence Weller. After breakfast, Mrs. Pentz volunteered to mow the lawn. She had only operated the Lawn Boy mower twice before and had not used it at all since the previous summer. Her brother, David Weller, engaged the rotary blade for her and gave her "some general instructions" on how to operate the mower. Brief for Appellants at 3; Brief for Appellee at 4. She then began mowing the lawn with the mower in first gear.

The Weller's lawn was rectangular in shape and Mrs. Pentz was mowing in rectangular sweeps. She had finished one such sweep and was beginning a second when she saw her own children playing near and to the left of the advancing mower. She scolded them and told them to play elsewhere. As she turned her attention back to the direction in which the mower was heading, she realized that Jennifer was only about five feet from the mower at an angle to the right and was walking into the mower's path. Mrs. Pentz testified that as soon as she saw Jennifer, she applied the mower's brakes, and then its clutch, but was unable to stop it. Appendix at 74–75.

The mower knocked Jennifer to the ground and came to rest on top of her, with the rotating blade cutting into her leg. Unable to think of any other means of stopping the mower blade, Mrs. Pentz jumped off the mower and attempted to lift the entire mower off Jennifer. *Id.* at 76. She was unable to do so and, according to Mrs. Pentz's testimony, the blade continued to strike the girl for approximately 30 seconds until Susan Baker and David Weller helped to extricate her. *Id.* at 76–77. Jennifer's injury was so severe that her leg had to be amputated at the hip.

Jennifer and Susan Baker subsequently brought a diversity suit against Outboard, alleging liability under section 402A of the Restatement (Second) of Torts,[2] which states in pertinent part that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user . . . is subject to liability for physical harm thereby caused . . . [even though] the seller has exercised all possible care in the preparation and sale of his product." Specifically, the Bakers contended that the mower was defectively designed in several respects,[3] and that those defects either caused the accident which injured Jennifer or substantially enhanced the injuries which she suffered as a result of the accident.

Outboard denied that the Lawn Boy mower contained any design defects. In the alternative, it claimed that even if the

---

**2.** Restatement (Second) of Torts, § 402A (1965) in its entirety provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

**3.** In particular, the Bakers alleged that: (1) The lawn mower seat was not adjustable for persons of various heights unless tools were used. Because the seat was set for persons of average height, and because Mrs. Pentz was only 5 feet 1 inch tall, she could not apply sufficient pressure to the brake pedal to bring the mower to a prompt halt; (2) The blade engage/disengage lever was located in an out-of-the-way and out of sight position, and was therefore useless in emergency situations; (3) Alternative means of stopping the blade in emergencies were not provided; (4) The mower contained no adequate warnings to alert users of the location of the blade disengage lever; (5) The mower had no "deadman's switch" which could have immediately halted the blade when Mrs. Pentz left the mower's seat.

mower were defective, those defects were not a proximate cause of Jennifer's injuries. Instead, according to Outboard, the negligence of Mrs. Pentz was an intervening cause which insulated it from liability to the Bakers.[4] Outboard also brought a third party suit against Mrs. Pentz,[5] in which it sought damages for all or part of any liability running from Outboard to the Bakers.

At trial, the Bakers requested that in charging the jury with respect to the requirements of section 402A, the district court avoid instructing that a manufacturer is liable only if its product is unreasonably dangerous,[6] despite the fact that the "unreasonably dangerous" phrase is a part of section 402A. In addition, since Outboard claimed that it was immune from liability because Mrs. Pentz's negligence was an intervening, superseding cause of Jennifer's injuries, the Bakers asked the court to give the jury a limiting instruction regarding third party negligence and intervening cause. Specifically, they requested a charge to the effect that in a section 402A suit, a third party's subsequent negligence only shields a manufacturer of a defective product from liability if the third party's act is

so extraordinary as not to have been reasonably foreseeable, and . . . whether the act was reasonably foreseeable [is] to be determined by following retrospectively the sequence of events and looking back from the harm to the negligent act rather than by considering whether the defendant should prospectively have envisaged the events which unfolded and caused the accident.

Plaintiff's Proposed Point for Charge # 16, quoting Eshbach, 481 F.2d at 945, quoting Wilson v. American Chain & Cable Co., 364 F.2d 558, 562 (3d Cir. 1966).

The district court did not adopt either of these proposals. Instead, the court declared that Outboard would be liable only if it sold "any product in a defective condition unreasonably dangerous to the user," Appendix at 174, and that in order to avoid liability, "[a]ll that [Outboard] is required to do is to make a product which is free from defective and unreasonably dangerous conditions." Id. The court, in addition, used the "unreasonably dangerous" phrase various other times in the course of its charge, usually in attempting to summarize the Bakers' claims against Outboard and Outboard's defenses to those claims, or to define the requirements of section 402A.[7] Moreover, al-

---

4. See Defendant's Answer to Complaint, at 4 (5th Defense); Defendant's Pre-Trial Memorandum, at 3; Defendant's Proposed Points for Charge, at 1 (Charge # 1.) See generally District Court's Instruction to Jury, Appendix at 172, 179.

5. Initially, Outboard joined not only Mrs. Pentz, but also Clarence Weller, his wife Betty, and Clarence Weller d/b/a Weller's Garage as third party defendants. Prior to instructing the jury, the district court granted a directed verdict in favor of all third party defendants other than Mrs. Pentz. Trial Transcript at 332–35.

6. In the alternative, the Bakers requested that if the court did refer to the "unreasonably dangerous" language of section 402A in its charge, it should define unreasonably dangerous as "simply dangerous to the extent beyond that which would be contemplated by the ordinary consumer". Plaintiff's Proposed Point for Charge # 4. The district court's actual definition of "unreasonably dangerous" was virtually identical to that contained in the Bakers' alternative request. See Appendix at 178 ("unreasonably dangerous means dangerous to an extent beyond that which would be contemplated

by the ordinary user.") However, because the Bakers made it clear that they adamantly opposed inclusion of the "unreasonably dangerous" phrase in the jury charge, see Plaintiffs' Trial Memorandum at 9, and that their alternative request was made solely to mitigate the damage which they believed would be caused by use of that phrase in the charge, we do not view the district court's adoption of their alternative request as in any way effecting a waiver of the Bakers' right to challenge on appeal the court's references to "unreasonably dangerous."

7. See Appendix at 172 (plaintiff claims that "the mower was unreasonably dangerous to anyone using it"); id. ("Outboard contends that the lawnmower was not defective and not unreasonably dangerous"); id. (Outboard "contends that even if this was a defective and unreasonably dangerous machine that it did not cause this accident"); id. (Outboard asserts that even "if the jury determines that the mower was defective and unreasonably dangerous, . . . then Anna Pentz should also be held liable"); id. at 173 ("Section 402A provides in pertinent part [that] '[o]ne who sells any prod-

though the court informed the jury of Outboard's claim *"that it did not cause this accident, that it was not a proximate cause of the accident,"* id. at 172 (emphasis added), and defined proximate cause as "that which in a natural and continuous sequence, *unbroken by any efficient intervening cause,* produces the injury," id. at 179 (emphasis added), it failed to suggest in any way consistent with our holding in *Eshbach* that third party negligence must be not reasonably foreseeable for it to constitute an intervening cause which shields a manufacturer from liability.

Immediately after it completed its charge, the court asked for additional instructions or corrections. Counsel for the Bakers did not object to the court's use of the "unreasonably dangerous" phrase or its failure to employ the *Eshbach* formulation regarding intervening cause. The jury subsequently entered a verdict in favor of Outboard,[8] and the Bakers moved for a new trial. In their motion, the Bakers renewed the objections they had made prior to the jury charge that jury instructions employing the "unreasonably dangerous" language of section 402A and failing to include the *Eshbach* treatment of third party negligence and intervening cause are improper under Pennsylvania law. The court denied the motion and this appeal followed.

## II

### DISCUSSION

*A. The "Unreasonably Dangerous" Instruction*

In their motion for a new trial, the Bakers placed principal reliance on *Berkebile v.*

*Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975). There, then Chief Justice Jones stated in the opinion announcing the judgment of the court that the "unreasonably dangerous" phrase "rings of negligence." 462 Pa. at 96, 337 A.2d at 899, *quoting Cronin v. J. B. E. Olson Corp.,* 8 Cal.3d 121, 132–33, 104 Cal.Rptr. 433, 441, 501 P.2d 1153, 1161 (1972). He concluded:

> We hold today that [this negligence] standard in any form has no place in a strict liability case. . . . To charge the jury . . . concerning the reasonableness of a consumer's or seller's actions and knowledge, . . . undermines the policy considerations that have led us to hold . . . that the manufacturer is effectively the guaranter [sic] of his product's safety. The plaintiff must still prove that there was a defect in the product and that the defect caused his injury; but if he sustains this burden, he will have proved that as to him the product was unreasonably dangerous. It is therefore unnecessary and improper to charge the jury on 'reasonableness.'

462 Pa. at 96–97, 337 A.2d at 900.

Chief Justice Jones' opinion was joined, however, by only one other Justice. The other five members of the court either filed concurring opinions or concurred in the result. Thus, less than a majority of the court concluded that a trial court errs when it charges that section 402A liability hinges on a jury finding that a product is unreasonably dangerous.

Precisely because Chief Justice Jones' opinion did not have the support of a majority of the supreme court, we held in *Bair v. American Motors Corp.,* 535 F.2d 249, 250

---

uct in a defective condition unreasonably dangerous to the user or consumer is subject to liability' "); id. at 174–75 ("The plaintiff in this case must prove under Section 402A . . . [t]hat at the time Outboard sold the mower it was unreasonably dangerous to those who would be expected to use it."); id. at 176 ("If you find that any one or all of these alleged defects existed at the time of the original sale by . . . Outboard . . . and further find that any one or all of these defects made the riding lawn mower unreasonably dangerous, . . . then you should find in favor of

the plaintiff"); id. at 178 ("if you find that this lawn mower was defective when it was sold, because of the absence of safety devices as I mentioned, then you should determine it was unreasonably dangerous.")

8. Because the jury decided in favor of Outboard in the Bakers' suit against Outboard, the jury did not reach, in accordance with the court's instructions, *see* Appendix at 180, the merits of Outboard's third party suit against Mrs. Pentz.

(3d Cir. 1976) (per curiam), that *Berkebile* did not change [9] longstanding Pennsylvania law [10] that a jury instruction using the "unreasonably dangerous" language of section 402A is proper. As a result, in denying the motion for a new trial, the district court found itself bound by the precedent of this Court to ignore *Berkebile.*[11]

The district court's order denying the Bakers' motion was filed on June 16, 1978. However, on October 5, 1978, after the Bakers had filed their original appellate brief but prior to argument before this Court, the Pennsylvania Supreme Court decided *Azzarello v. Black Brothers Co.,* 480 Pa. 547, 391 A.2d 1020 (1978). Azzarello had been injured at work. He sued the manufacturer of the machine that had injured him, under a strict liability theory based on section 402A. The manufacturer joined Azzarello's employer as an additional defendant. In its charge to the jury, the trial court frequently stated that the manufacturer's liability depended on a finding that its machine was "unreasonably dangerous." [12] The jury

found in favor of the manufacturer and against Azzarello's employer.[13] The employer then moved for a new trial, which was granted by the trial court on the theory that the court's charge was inconsistent with *Berkebile,* which had been decided subsequent to the charge and the jury's verdict.

In affirming the grant of the new trial motion, the supreme court in a unanimous opinion made it clear that reference in jury instructions to the "unreasonably dangerous" language of section 402A was reversible error mandating a new trial. The court noted that the phrase has "no independent significance and merely represent[s] a label to be used where it is determined that the risk of loss should be placed upon the supplier." [14] Because the determination of risk of loss is "a judicial function," [15] whether a product is "unreasonably dangerous" does not "fall within the orbit of a factual dispute which is properly assigned to the jury for resolution." [16] Thus, the court held that

---

9. In *Bair,* we relied on *Commonwealth v. Little,* 432 Pa. 256, 248 A.2d 32 (1968), in which the Pennsylvania Supreme Court refused to follow a prior opinion representing the views of only two justices on the theory that it had "no binding precedential value." *Id.* at 260, 248 A.2d at 35. We reached an identical result in *Greiner v. Volkswagenwerk Aktiengesellschaft,* 540 F.2d 85, 91 (3d Cir. 1976), where we held that a statement in Chief Justice Jones' opinion in *Berkebile* that a defect exists when the seller fails to warn about a product's risks and limitations did not become Pennsylvania law because it was not supported by a majority of the court.

10. *See Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966).

11. The Bakers also claimed that even if *Berkebile* was equivocal as to the law of Pennsylvania, two Pennsylvania superior court cases decided after *Berkebile* established that an instruction based on the "unreasonably dangerous" language of section 402A was erroneous. *See Lenkiewicz v. Lange,* 242 Pa.Super. 87, 363 A.2d 1172 (1976); *Cornell Drilling Co. v. Ford Motor Co.,* 241 Pa.Super. 129, 359 A.2d 822 (1976). In its opinion denying the motion for a new trial, the district court rejected the Bakers' interpretation of those cases. In view of our holding *infra* that *Azzarello v. Black Bros. Co.,* 480 Pa. 547, 391 A.2d 1020 (1978), decided after both *Lenkiewicz* and *Cornell Drilling,* is the

dispositive pronouncement of Pennsylvania law with respect to the "unreasonably dangerous" instruction, the two superior court cases are irrelevant to our disposition of this appeal.

12. For example, the trial court explained to the jury that: "one who sells any product in a defective condition, unreasonably dangerous to the user, is subject to liability"; that "the plaintiff must prove that the defendant sold the product involved in a defective condition, unreasonably dangerous to the user"; that "the focal issue in these cases is whether the absence of safety devices created an unreasonable danger to the operator"; and that "[a] properly made product is defective if its design is unreasonably dangerous." *See* 480 Pa. 550, 391 A.2d at 1022 n.2.

13. It is unclear from the state supreme court's recitation of the facts whether the manufacturer was found to be not liable and the employer was found to be liable in an action by Azzarello against both of them, or whether the employer was held liable to the manufacturer in a third party suit after the manufacturer was found liable to Azzarello in the original suit.

14. 480 Pa. at 556, 391 A.2d at 1025.

15. *Id.* at 558, 391 A.2d at 1026.

16. *Id.*

"[i]t is clear that the term 'unreasonably dangerous' has no place in the instructions to a jury" in a section 402A case.[17]

 Under the doctrine of *Erie Railroad Co. v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we, and the district court, are bound in diversity cases by the law of Pennsylvania as it has been determined by the state supreme court. Since that court has now ruled that a trial judge may not instruct the jury that a plaintiff in a section 402A suit must prove that a product is "unreasonably dangerous," we are compelled to hold that the district court committed reversible error when it employed that phrase.[18]

The controlling nature of *Azzarello* on this appeal is unaffected by the fact that *Azzarello* had not yet been decided when the district court charged the jury. In *Vandenbark v. Owens-Illinois Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941), the United States Supreme Court held that "until such time as a case is no longer *sub judice*, the duty rests upon federal courts to apply state law . . . in accordance with the *then* controlling decision of the highest state court." *Id.* at 543 (emphasis added).[19] Indeed, the Court recognized explicitly that the result of this rule would be that "[i]ntervening and conflicting [state court] decisions will thus cause the reversal of judgments which were correct when entered." *Id.* Therefore, because *Azzarello* controls our disposition of this appeal, and because the district court's charge is inconsistent with *Azzarello*, the Bakers are entitled to a new trial.

### III

It is likely that Outboard will again contend at the new trial that any defect in the mower was not a "proximate" cause of Jennifer's injury, because Mrs. Pentz's alleged

---

**17.** *Id.* at 559, 391 A.2d at 1027.

**18.** Outboard claims that the court in *Azzarello* did not intend to suggest that the "mere use" of the words "unreasonably dangerous" in a jury charge automatically required a new trial. Supplemental Brief for Appellant at 1. Rather, in Outboard's view, *Azzarello* holds only that a court cannot use "unreasonably dangerous" in such a way as to mislead the jury into thinking that a manufacturer's liability depends on whether its conduct was unreasonable. Outboard asserts that the district court's charge was consistent with this narrow reading of *Azzarello*. It states that when the court told the jury that "if you find that this lawn mower was defective . . . *then you should determine it was unreasonably dangerous*," Appendix at 178, the court was not suggesting that a "reasonable man" standard should be applied, but instead was directing the jury to find that if the product was defective, then it was unreasonably dangerous as a matter of law. Even assuming, however, that *Azzarello* does not bar a court from informing the jury that if it finds a defect in a product, then it must find the product to be unreasonably dangerous—a question about which we express no opinion—we still find the charge in this case unacceptable. As we noted in ¶ 8 and note 7 *supra*, the district court used the phrase "unreasonably dangerous" on other occasions in the course of its charge. Although the sentence relied on by Outboard might not be objectionable standing alone, the court's charge as a whole fatally "rings of negligence." 480 Pa. at 555, 391 A.2d at 1025, *quoting Cronin*, 8 Cal.3d at 132–33,

104 Cal.Rptr. at 441, 301 P.2d at 1161. Indeed, the court's repeated comments in this case to the effect that the "plaintiff . . . must prove under Section 402A . . . [t]hat . . . the mower . . . was unreasonably dangerous", Appendix at 174–75, are virtually identical to those used by the trial court in *Azzarello*. Compare instructions to jury in this case, *quoted in relevant part in* note 7 *supra*, *with* instructions to jury in *Azzarello, quoted in relevant part in* note 12 *supra*.

**19.** In *Bradley v. School Board of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court ruled that an appellate court is not obligated to apply new *federal* law which was not in effect at the time a lower court rendered its decision when application of the new law retrospectively would cause "manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. Even assuming that this principle applies equally when the intervening law is state rather than federal law, Outboard offers no evidence to suggest that retrospective application of *Azzarello* would result in manifest injustice to it. Moreover, we see no indication in the court's opinion in *Azzarello*—that opinion being the equivalent, in this context of judge-made law, to statutory direction or legislative history—that *Azzarello* only applies prospectively. Indeed, the court upheld "[t]he propriety of the grant of a new trial on the basis of a subsequent decision in a civil case." *See* 480 Pa. at 552, 391 A.2d at 1023.

negligence in operating the mower was an intervening, superseding cause. Thus, it is appropriate to note that the district court erred in failing to instruct the jury, as we required in *Eshbach v. W. T. Grant's & Co.*, 481 F.2d 940 (3d Cir. 1973), that a third party's negligence in a products liability case only relieves the manufacturer of liability when the third party's acts are

> so extraordinary as not to have been reasonably foreseeable, and [that] . . . whether the act was reasonably foreseeable [is] to be determined by following retrospectively the sequence of events and looking back from the harm to the negligent act rather than by considering whether the defendant should prospectively have envisaged the events which unfolded and caused the accident.

*Id.* at 945, *quoting Wilson v. American Chain and Cable Co.*, 364 F.2d 558, 562 (3d Cir. 1966).

*Eshbach* also involved a section 402A suit resulting from a riding lawn mower accident. At trial, counsel for the seller of the mower repeatedly asked questions designed to suggest that the minor plaintiff's father had been negligent, and alluded to the father's conduct in his summation. Counsel for plaintiff objected to many of those questions, and requested the district court to instruct the jury that negligence was not an issue in plaintiff's suit. The court refused the request and the jury returned a verdict for the seller. In remanding for a new trial, we stated that the only possible relevance of the father's negligence in a strict liability case was its effect on the causal link between any defects in the mower and the plaintiff's injury. *See* 481 F.2d at 944–45. We thus held that "the

failure of the trial judge to either remove the question of Mr. Eshbach's negligence from the case *entirely* or, if it was to be considered, to instruct the jury as to the limits of its application," was reversible error. *Id.* at 945 (emphasis added). Relying on *Wilson*, we concluded that such an instruction would have to emphasize that a third party's act must be truly unforeseeable for it to constitute an intervening cause of a plaintiff's injury. *Id.* Thus, the rule of *Eshbach* is that unless the trial court *completely* takes from the jury any question of third party negligence, the court must explain to the jury the very limited role of third party negligence in a products liability case based on section 402A.

In its opinion denying the Bakers' motion for a new trial, the district court concluded that it was justified in not giving the *Eshbach/Wilson* instruction because, as *Eshbach* permitted, it had removed the question of negligence from the jury. The court noted that it had charged that:

> [Y]ou must initially determine liability on the first suit between Jennifer Baker and Outboard Marine. If you find for the plaintiff against the defendant in this suit, then and only then do you consider the second suit between the third party plaintiff, Outboard Marine, and the third party defendant, Anna Pentz.

Tr. Trans. at 340.[20] Thus, the court assumed that Mrs. Pentz's negligence was *only at issue in the third party suit*, and that by clearly separating that suit from the Bakers' strict liability suit against Outboard, it had removed all reference to negligence from the strict liability action.

In fact, however, the court did not remove the question of Mrs. Pentz's negli-

---

**20.** The court also relied on the following instruction:

> [W]hile the lawsuit of Outboard Marine against Anna Pentz is predicated or based upon negligence, the suit of the plaintiff against the defendant is not predicated upon negligence, because negligence is not a factor in a 402A lawsuit.

Tr. Trans. at 349. The trial judge made that statement, however, in the course of explaining what elements the Bakers had to prove to recover from Outboard under a strict liability

theory, as opposed to a negligence theory. Thus, what the court was saying was that in the section 402A suit, whether *Outboard* was negligent was irrelevant. That instruction was not intended, nor was it likely, to inform the jury that *Mrs. Pentz's* negligence was irrelevant to Outboard's liability in the strict liability action. As a result, the instruction was not in compliance with our holding in *Eshbach,* which required the trial court to explain to the jury the proper and limited role of *third party* negligence in a products liability suit.

gence from the Bakers' suit. Mrs. Pentz's alleged negligence was relevant to two separate aspects of this litigation. First, it was at issue in Outboard's third party suit. The court's charge properly made it clear that the jury was not to consider this suit until it had decided the merits of the Bakers' suit against Outboard. Second, it was an integral part of Outboard's defense to the strict liability suit. In that suit, Outboard contended that it was not liable to the Bakers because any defects in the mower were not a proximate cause of Jennifer's injuries, since Mrs. Pentz's negligence was an intervening, superseding cause. Nothing in the court's charge, however, instructed the jury, as we required in *Eshbach*, to disregard Mrs. Pentz's negligence in deciding the question of proximate causation in the Bakers' suit, or to note that her negligence could only serve as an intervening, superseding cause if it was "so extraordinary as not to have been reasonably foreseeable."

 The district court stated in its opinion denying the new trial motion that its instruction that there may be more than one proximate cause, and that Outboard would be liable if a defect was "*a* proximate cause," Tr. Trans. at 357 (emphasis added), adequately informed the jury that it could find Mrs. Pentz to be negligent, and further find her negligence to be a *proximate* cause of Jennifer's injuries, and still conclude that Outboard was liable to the Bakers. The force of the court's charge that a defect in the mower need only be "a" proximate

cause was greatly diminished, however, by the court's comment that "proximate cause is that which in a natural and continuous sequence, *unbroken by any efficient intervening cause*, produces the injury." *Id.* at 353–54. A jury would likely understand that comment as instructing that if a factor such as Mrs. Pentz's negligence was an *intervening* cause of Jennifer's injury, any defect in the mower would not even be "*a*" proximate cause. Thus, without the *Eshbach* instruction defining intervening cause, the jury lacked guidance in deciding whether a defect in the mower was a proximate cause of Jennifer's injury, or whether, instead, Mrs. Pentz's alleged negligence was an intervening cause. This is precisely the problem which we recognized in *Eshbach*, and precisely the reason why the *Eshbach* instruction must be given in a section 402A suit unless third party negligence is *totally* removed from the jury's consideration.[21]

## IV

## CONCLUSION

The order of the district court denying appellants' motion for a new trial will be reversed, and the case will be remanded for a new trial.

---

**21.** In denying the new trial motion, the court also relied on Proposed Standard Jury Instruction 3.28, prepared by the Civil Instructions Subcommittee of the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions. Proposed Instruction 3.28 states that "[n]o instruction [on intervening or superseding cause] should be given." That proposed instruction does not appear, however, to have yet been adopted. Thus, it does not undermine the force of our holding in *Eshbach*. Moreover, we would still find the court's failure to give the *Eshbach* instruction to be error even if Proposed Instruction 3.28 were in effect. The subcommittee note to the proposed instruction states that "[t]he basic rule . . . that the legal cause [of an injury] is *any sub-*

*stantial contributing factor*, takes into account all situations envisioned by any charge on superseding cause" (emphasis added). Thus, the proposed instruction contemplates that if a charge using the "substantial contributing factor" phrase is given, the added introduction of the terms "intervening" or "superseding" cause would needlessly confuse a jury and should be omitted from a jury charge *entirely*. But, since the district court saw fit—contrary to the intent of the drafters of the proposed instruction—to bring the concept of intervening cause to the jury's attention, the *Eshbach* instruction delimiting the scope of the intervening cause defense in a strict liability case would have been necessary in any event.