**Herman C. WIEDER and Rebecca E. Wieder**

v.

**TOWMOTOR CORPORATION.**

Civ. No. 79–522.

United States District Court, E.D. Pennsylvania.

July 28, 1983.

Arnold Kessler, Philadelphia, Pa., for plaintiffs.

Thomas Ziomek, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Defendant, Towmotor Corporation (Towmotor), moving for judgment notwithstanding the verdict or for a new trial, argues generally that plaintiff's [1] proofs are legally insufficient to support the verdict. Towmotor's primary contentions in this products liability case are that plaintiff failed to adduce any evidence of a "defect", that plaintiff's alternative design concept is not feasible, that the intervening negligence of a third party was the proximate cause of the accident and that plaintiff's counsel admitted to the jury that the third party's conduct was the legal cause of plaintiff's injury.

A brief factual description of the events which gave rise to the litigation is helpful to understanding our resolution of the issues. In reciting the facts we are mindful that, as to defendant's motion for judgment notwithstanding the verdict, all inferences must be drawn in favor of the verdict winner. *Marian Bank v. International Harvester Credit Corp.,* 550 F.Supp. 456, 460 (E.D.Pa.1982). Defendant's motion for a new trial, on the other hand, is committed to our sound discretion and may only be granted when it is "quite clear that the jury has reached a seriously erroneous result". *Id.* at 463.

Plaintiff was injured in September 1979, while working as a pipe-fitter and a burner at the Argyle Manufacturing Company. (N.T. 20–21). His injuries occurred in the following manner: Plaintiff's co-worker, Anthony "Chip" Ventere, placed a loaded "pipe buggy" on the ground near the plaintiff. (N.T. 21–22). The pipes in the buggy had to be measured but they were too long for one person to do the job. Ventere and plaintiff consequently measured the pipes together. In order to do this, Ventere had to get off the forklift which he had been driving. Unfortunately, Ventere did not set the handbrake, (N.T. 22), and failed to take any precaution to immobilize the vehicle. Worse, he stopped it on a slight, perhaps imperceptible, grade. (N.T. 23). The forklift, now driverless, slowly drifted towards Ventere and the plaintiff. Plaintiff "felt something against [his] leg" and yelled to Ventere to get out of the way. Ventere did. Unfortunately, plaintiff was unable to move with equal dispatch. The forklift struck him, (N.T. 22–23); plaintiff suffered a traumatic amputation of the right leg below the knee. (N.T. 26). The jury returned a verdict in the amount of $250,000. (N.T. 373). We added damages for delay under Pennsylvania R.Civ.P. 238 in the amount of $86,986.30 (N.T. 378). *See, Hayden v. Scott Aviation, Inc.,* 684 F.2d 270 (3d Cir.1982); *Jarvis v. Johnson,* 668 F.2d 740 (3d Cir.1982).

Plaintiff's theory of liability is that the forklift should have had a passive, "back-up" brake system which would have immobilized the vehicle when an operator, such as Ventere, failed to follow recommended safety procedures. Plaintiff specifically argued that the forklift should have had a seatbrake which would automatically engage the regular brake when the driver left the vehicle. Alternatively, plaintiff argued that the vehicle should have been equipped with a buzzer or alarm to alert drivers who fail to set the handbrake prior to dismounting.

We now turn to the legal issues raised by the defendant.

Defendant asserts that plaintiff was unable to show that the forklift was defective in that, according to Towmotor, the vehicle's design represents a fair and reasonable accommodation between the competing interests of safety, cost and utility. Defendant's argument, stripped to its essence, is that we erred in discharging our judicial function when we submitted the case to the

1. Both Herman and Rebecca Wieder are named as plaintiffs. For the sake of clarity we refer to them both in the singular as "plaintiff".

jury. *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020, 1026 (1978).

■ In *Azzarello* the Pennsylvania Supreme Court held that trial courts must determine whether the supposedly defective product is "unreasonably dangerous". After that determination is made, the case should be submitted to the jury. The term "unreasonably dangerous" must, however, be omitted from the charge. *Id.* Interpreting *Azzarello*, *Hammond v. International Harvester Co.*, 691 F.2d 646, 650 (3d Cir.1982), held that when the trial court submits a case to the jury it has *sub silento* made the judicial determination that, under plaintiff's proofs, the product is unreasonably dangerous. Defendant's motion attacks this judicial decision made at trial.

Defendant argues that prior to *Azzarello*, a proper § 402A charge instructed the jury that it must strike a balance between the cost, utility and safety aspects of the allegedly defective product. *See, Bowman v. General Motors Corp.*, 427 F.Supp. 234, 244 n. 18 (E.D.Pa.1977). According to defendant, *Azzarello* mandated a change in the identity of the decisionmaker who must make this determination. *Azzarello* did not, however, obliterate the requirement that this determination be made.

■ Defendant's argument finds some support in *Azzarello* which requires courts, based upon consideration of "social policy" to determine if the product is "unreasonably dangerous". *Azzarello v. Black Bros. Co., Inc.*, 391 A.2d at 1026. The inquiry is guided by whether the product is safe for its "intended use", *i.e.*, whether the product lacked "any element necessary to make it safe ... or possess[ed] *any* feature that renders it unsafe ...". *Azzarello v. Black Bros. Co., Inc.*, 391 A.2d 1026–27. (quotation omitted) (emphasis added).

■ We submitted the case to the jury after concluding that, under plaintiff's proofs, the forklift was "unreasonably dangerous" when it left defendant's control. Specifically, the forklift was designed and manufactured in such a way so as to allow it to drift unattended and without warning down an imperceptible slope. True, forklift manufacturers do not "intend" to have their products left unattended when not immobilized. However, the law obliges them to design safe products which will not cause harm except when used in a "truly unforeseeable" manner which is "so extraordinary as to not have been reasonably foresee[n]". *Baker v. Outboard Marine Corp.*, 595 F.2d 176, 183 and 184 (3d Cir. 1979).

When we submitted the case to the jury we concluded that operator error, oversight or absentmindedness are all "reasonably foreseeable" events which design standards must contemplate. Plaintiff claimed that an automatic seatbrake would have made the product safe. Alternatively, plaintiff argued that the forklift should have been equipped with a seat-activated alarm which would alert the potentially forgetful operator to immobilize the vehicle prior to dismounting. This device would assertedly be similar to buzzers on cars which remind drivers to fasten their seat belts. Based upon these considerations, and the mandate of *Azzarello*, we believe that we properly submitted the case to the jury.

■ Defendant also contends that plaintiff failed to carry its burden of showing that the proposed safety device is feasible. *Huddell v. Levin*, 537 F.2d 726, 737 (3d Cir.1977); *Jeng v. Witters*, 452 F.Supp. 1349, 1359 (M.D.Pa.1978), *aff'd*, 591 F.2d 1335 (3d Cir.1979). Specifically, defendant points to testimony that forklift operators frequently stand while driving and maneuvering the machines. An automatic seatbrake would preclude this type operation. Moreover, defendant adduced testimony that vehicles of this type are frequently operated over rough terrain and that the driver is bounced around and jostled in his seat. An automatic seatbrake would abruptly and repeatedly stop the vehicle under such circumstances, move the load on the forks and possibly throw the driver out of the vehicle. Finally, defendant introduced testimony that operators would rely upon the seatbrake as a primary rather than as a secondary safety system. Hence,

operators might not use the handbrake. The problem would then arise when the operator remounted the vehicle using the seat to pull himself up. By doing so, he would deactivate the only engaged braking system. The forklift would then move forward well before the operator was in control of it.

Plaintiff countered this defense testimony with evidence that similarly designed electric powered vehicles have, as a standard item, automatic seatbrakes. (N.T. 62). Plaintiff's experts opined that there is "no good reason" why gas powered forklifts do not also have such a seatbrake. (N.T. 62; 112–113). They also described a system which could hold the vehicle on an "acceptable" 5% grade, but would not activate the brake while the forklift was driven over rough terrain. (N.T. 61; 113–114; 126). One of the experts also opined that, as an alternative, manufacturers should include an audible buzzer which would remind the operator to set the handbrake. (N.T. 63–64). Echoing similar sentiments, plaintiff's second expert opined that manufacturers must anticipate some user error and design products with appropriate systems based thereon. (N.T. 89; 110).

The jury heard this conflicting evidence and concluded that plaintiff's proffered design was safe and feasible. Specifically, a jury question is presented on this issue even where plaintiff is *unable* to provide a "clear and concise diagram or verbal picture of the type of device it posits". *Hollinger v. Wagner Mining Equipment Corp.,* 667 F.2d 402, 410 (3d Cir.1981).[2] Plaintiff's proofs at trial more than adequately met this standard.

Towmotor also urges that the accident was legally caused by Ventere's misconduct in that he failed to immobilize the vehicle prior to dismounting. Indeed, defendant points to the fact that Ventere ignored the warning plate affixed to the vehicle which contains the following directions:

> Parking—Lower lifting mechanism to floor. Place directional control or transmission in neutral. Set parking brake. Turn "ON–OFF" switch off. Chock wheels if machine is on incline.

The parties do not dispute that Ventere failed to follow any of these directions and, had he followed just one of them, the accident would not have happened.[3] It does not follow, however, that Ventere's misconduct relieves Towmotor of liability.

First, although Ventere's misconduct may have "caused" the accident, an act "need not be the sole cause of an injury for it to be considered a proximate cause; it need only be a substantial factor in bringing that injury about". *Murphy v. United States,* 653 F.2d 637, 648–49 n. 47 (D.C.Cir. 1981). Accordingly, an event may have

---

**2.** In *Owens v. Allis Chalmers Corp.,* 414 Mich. 413, 326 N.W.2d 372 (1982), the Supreme Court of Michigan affirmed the entry of a directed verdict for the defendant where the plaintiff failed to adduce *any* proof as to the "costs or effects" of other safety restraints. *Id.* at 379. Here, the effects and feasibility of plaintiff's alternative design were fully explored.

In any case, given the relatively low threshold showing which plaintiffs must make as to feasibility under *Hollinger v. Wagner Mining Equipment Co., supra,* we decline defendant's invitation to follow the Michigan Supreme Court.

**3.** Defendant also makes an argument which combines both questions of feasibility and proximate cause. The proffered automatic seatbrake would tie in with the manually engaged emergency brake. Defendant asserts that had its product been equipped with either the seatbrake or a buzzer the accident would nevertheless have happened in that the vehicle's emergency brake was purportedly not operating at the time of the accident. There is some record evidence to the effect that the vehicle's emergency brake was not functional at the time of the accident. (N.T. 137). This evidence is, however, weak and contradicted by the same witness's excited utterance. (N.T. 22). Moreover, counsel stipulated that the forklift had a functioning handbrake after the accident. The signed stipulation, approved by the court, states that:

> No one touched or repaired the handbrake between the time of the accident and the time the handbrake was inspected by Argyl's employees two hours later when it was found that the forklift truck had an operating, functional handbrake.

Defendant's argument that there was no properly functioning brake and that the proposed safety system could not have prevented the accident, is not strongly supported by the evidence and was rejected by the jury.

"more than one proximate cause". *David v. Broadway Maintenance Corp.,* 451 F.Supp. 877, 882 (E.D.Pa.1978). The accident may be fairly said to have had two causes; both Towmotor and Ventere are responsible.

■ Second, questions of proximate cause are "ordinarily" determined by the jury. *Meuller v. Jeffrey Manufacturing Co.,* 494 F.Supp. 275, 277 (E.D.Pa.1980), *aff'd,* 649 F.2d 860 (3d Cir.1981); *David v. Broadway Maintenance Corp.,* 451 F.Supp. at 881.

■ Third, negligent or other improper conduct by a third person will relieve the primary tortfeasor of liability only where the third person's conduct is "truly unforeseeable" or "so extraordinary as not to have been reasonably foreseeable". *Baker v. Outboard Marine Corp.,* 595 F.2d at 18–384; *Eshbach v. W.T. Grant & Co.,* 481 F.2d 940, 945 (3d Cir.1973); *Messenger v. Bucyrus-Erie Co.,* 507 F.Supp. 41, 43 (W.D.Pa.1980); *David v. Broadway Maintenance Corp.,* 451 F.Supp. at 882. Hence, even though Ventere may have been the immediate "cause" of the accident, the jury determined that his conduct was neither "truly unforeseeable" nor "so extraordinary as not to have been reasonably foreseeable". *Baker v. Outboard Marine Corp., supra.*

■ Fourth, a jury question was presented as to whether the directions which relate to immobilizing the vehicle during "parking" were applicable when Ventere temporarily dismounted the forklift. For example, plaintiff's expert testified that Ventere did not "park" the forklift or leave it "unattended" within the meaning of the instructions and the applicable safety regulations. Specifically, Ventere was, at all times, within twenty-five feet of the vehicle which was purportedly in his view. (N.T. 98–99). The

expert repeated this contention on cross-examination. (N.T. 119–120). Defendant's evidence was to the contrary (N.T. 210–215); its theory being that the instructions mandated that the forklift be properly immobilized every time the operator dismounts it. (N.T. 211). This question was argued to the jury by both plaintiff, (N.T. 327–328), and defendant, (N.T. 317–318), and we are unwilling to upset their determination.

*Sherk v. Daisy-Heddon,* 498 Pa. 594, 450 A.2d 615 (1982), does not aid defendant in its theory that "product misuse" by Ventere caused the accident. In *Sherk,* the Pennsylvania Supreme Court absolved a B–B gun manufacturer of liability where the user thereof, knowing its dangerous propensities, pointed the gun at his friend's head and pulled the trigger. The court concluded that, in view of the user's knowledge and his purposeful, intentional conduct, liability could not be imposed upon the defendant because of any alleged failure to warn. *Id.* at 618. Thus, *Sherk,* a "failure to warn" case, sheds little illumination upon issues raised in this "defective design" case.[4]

■ The final issue which we address is whether plaintiff's closing contained an admission that Ventere was solely responsible for plaintiff's injuries. Generally, admissions of fact made by counsel are binding upon their principals so long as they are "unequivocal". *Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3d Cir.1972); *Childs v. Franco,* 563 F.Supp. 290 at 292 (E.D.Pa. May 20, 1983). Where, however, a "doubt exists" as to the purported admission, the issue may not be removed from the jury's consideration. *Rhoades, Inc. v. United Air Lines, Inc.,* 340 F.2d 481, 484 (3d Cir.1965),

---

4. Defendant's reliance upon *Meuller v. Jeffrey Manufacturing Co.,* 494 F.Supp. 275 (E.D.Pa. 1980), is equally misplaced. There, we granted a motion for summary judgment because, in large part, the manufacturer had assumed "no responsibility" for installing the harm-causing instrumentality. Indeed, plaintiff's employer both "designed and installed" the opening through which plaintiff fell. Under these circumstances, we concluded that the "apparent

negligence of [the employer] and/or its employees constituted a superseding cause". *Id.* at 276–77.

Here, by contrast, defendant designed and manufactured the forklift which injured plaintiff. Although Ventere may have been negligent, we have already concluded that his conduct was not so unforeseeable as to break the causal chain.

quoting, *Oscanyan v. Arms Co.,* 103 U.S. 261, 263, 26 L.Ed. 539 (1880).

■■■ Defendant asseverates that plaintiff made an unequivocal admission to the jury during closing. Specifically, defendant points to the following portion of plaintiff's closing:

Members of the jury, there is no question that Chip Ventere caused this accident. I submit to you there can be no other conclusion; that his carelessness at this moment caused the happening of this accident. He forgot to pull that handbrake .... I tell you he was responsible. He was careless, unfortunately, and he caused the accident.

(N.T. 274–275).

Immediately after this purported "admission" plaintiff attempted to rebut defendant's theory that Ventere's conduct was the *sole* legal cause of the accident. He stated that Ventere's conduct

is not the issue here. We are not trying this case on the question of what Chip Ventere did. That is not the issue. But there can be an argument made that his action shielded the manufacturer. The only way you can conclude that to be so is if you conclude that his conduct was truly extraordinary and not reasonably foreseeable, and I submit to you that you have heard ample testimony in this courtroom that human error, human failure, or "I forgot to set the handbrake" would not be considered a truly extraordinary and unreasonably foreseeable event by the operator of a forklift truck. So I would ask you to just consider that and you can easily put that argument to a rest.

(N.T. 275).

Although Ventere was referred to as *a* "cause" of the accident, the argument centered upon the theory that Ventere did not break the causal connection between Towmotor's design and plaintiff's injury. Plaintiff argued that although Ventere "caused" the accident, a verdict against the defendant was nevertheless warranted. The reason for this was cogently explained: Ventere's conduct could only constitute a superseding "cause" of the accident if it was so extraordinary as not to have been

reasonably foreseen. The argument is supported by law. *Baker v. Outboard Marine Corp.,* 595 F.2d at 183–84. The statement that Ventere "caused" the accident was also doubtlessly made in view of the fact that an event may have more than one proximate cause. *David v. Broadway Maintenance Corp.,* 451 F.Supp. at 882.

Plaintiff's argument to the jury was similar to our charge on the point. We instructed the jury that in order to find for plaintiff, it must conclude that the alleged defect was the "proximate cause" of the injuries which plaintiff suffered. (N.T. 349). We defined "proximate cause" in the following manner:

And what is proximate cause? An injury is proximately caused by an act or a failure to act whenever it appears from the evidence in the case that the act or omission played a substantial part or was a substantial factor in bringing about or actually causing the injury, and that the injury caused was either a direct result or a reasonable and probable consequence of the act or omission.

(N.T. 349–50). We further instructed that the alleged defect would be a proximate cause of plaintiff's injuries if found to be a "material element and [a] substantial factor in bringing it about". (N.T. 350).

We also addressed Ventere's conduct and instructed the jury that:

the defendant contends that the intervening conduct of the forklift operator Ventere, constitutes an intervening or superseding cause of the accident, and that any defect or defects in the machine were therefore not the proximate cause of the plaintiff's injuries. You are instructed that any conduct on the part of Ventere could serve as an intervening, superseding cause if and only if it was so extraordinary and as not to have been reasonably foreseeable by the defendant. Otherwise stated, Ventere's act or conduct must have been truly unforeseeable to the defendant to constitute an intervening cause of plaintiff's injuries.

(N.T. 350–351).

The parallel between plaintiff's closing and our charge need not be belabored.

Both discussed Ventere's conduct, both related his conduct to the issue of causation and both concluded that the conduct would break the causal connection only if it was extraordinary and truly unforeseeable.

Plaintiff's "admission" was an acknowledgment that Ventere's conduct was a factor in causing the accident. Even so, the "admission" does not amount to an "unequivocal" statement that Ventere was the *sole* legal cause of the accident. *Glick v. White Motor Co.,* 458 F.2d at 1291. Indeed, while "admitting" that Ventere "caused" the accident, counsel also urged the jury to find that Ventere's conduct was neither "truly extraordinary" nor "reasonably unforeseeable". (N.T. 275). In light of this, plaintiff requested the jury to "put to rest" the notion that Ventere was the only legal cause of the accident. (N.T. 275). This argument was entirely proper, did not contain a binding admission and was referenced to the appropriate legal standard which emphasizes the "very limited role of third party negligence in a products liability case". *Baker v. Outboard Marine Corp.,* 595 F.2d at 183.

An appropriate order shall issue.