De Lio et al., Appellants, *v.* Hamilton.

582

Argued March 29, 1973. Before Wright, P. J., Watkins, Jacobs, Hoffman, Spaulding, Cercone, and Spaeth, JJ.

Before deFuria, J.

*Mary Alice Duffy,* for appellants.

*Andrew J. Forbes,* with him *Cramp, D'Iorio, Mc-Conchie and Surrick,* for appellee.

Opinion by Watkins, J., June 14, 1973:

This is an appeal by the plaintiff-appellants, Joseph M. DeLio, a minor, by his guardians and parents, Joseph P. DeLio and Louise DeLio, from an order of the Court of Common Pleas of Delaware County denying a motion to take off a nonsuit granted by the court below.

The minor plaintiff was born May 19, 1961, and the action in trespass was brought by his parents to recover damages for injuries sustained by the minor when he was struck by an automobile in Glenolden, Delaware

County, Pennsylvania, on May 28, 1965. At the time of the accident, the minor was four (4) years of age.

The trial began on January 31, 1972, almost seven (7) years after the accident and when the minor was ten (10) years of age. At the close of the plaintiffs' case, a compulsory nonsuit was granted by the court below on the ground of failure to make out a prima facie case of negligence. The motion to take off the nonsuit was denied and this appeal followed.

The rule is well settled that in order to grant a nonsuit the evidence must be read in the light most favorable to the plaintiff. A nonsuit can only be awarded in a clear case and the plaintiffs must be given the benefit of all favorable evidence and all reasonable inferences therefrom and all conflicts must be resolved in favor of the plaintiff. *Schofield v. King*, 388 Pa. 132, 130 A. 2d 93 (1957). This case also held that it is equally clear that the mere happening of an accident is not proof of negligence.

At trial the father of the minor stated that his son had asked him for money to buy ice cream from a truck whose bell was announcing its presence in the area. The conversation took place in the living room of the home. The boy left and shortly thereafter the father testified that he heard the screech of brakes. He went out to investigate and saw the ice cream truck parked on the opposite side of the street from his home. It was parked in the space between two driveways. The driveways provide a means of ingress and egress to garages located behind certain homes. The defendant-driver resided in one of those homes serviced by one of the said driveways. The father saw his son being picked up from the road by a neighbor from a position in front of the defendant's automobile.

The defendant's automobile was turned in a direction toward the driveway which served his garage. The occurrence described by the father as he arrived on the

scene was within a few feet of the ice cream truck. The father also stated on cross-examination that the defendant had told him at the time of the accident "that he was washing his automobile and was taking it around back".

The defendant resided on Park Drive; the DeLios reside at 433 Park Drive on the south side of the road. Park Drive is a two-way street running east and west and is twenty-five (25) feet wide. There was a lane leading off Park Drive on the north side leading to the defendant's garage. To get to the garage would require a left-hand turn if he were traveling east as indicated in the sketch admitted into evidence.

The map in question was prepared by DeLio. It indicated that the defendant's automobile was turned partially toward the driveway which served his garage. The automobile was located in the west-bound lane, but was facing east. The width of the ice cream truck was approximately eight (8) feet and it was testified that it was parked on the north side of Park Drive. It would be possible to infer that this width together with three (3) feet testified as to where he was struck put the defendant's car on the wrong side of the highway.

It is alleged that the minor plaintiff suffered a linear fracture of the skull and frontal headaches which lasted for a year after. He also reverted to bedwetting and had nightmares and a fear of cars.

The minor child testified that when he was struck by the vehicle that he was closer to the side of the street on which his home was located. This was in answer to a question on cross-examination which the record raises some doubts as to clarity. He testified that he was only about three feet from the ice cream truck when he was struck. He also testified as to who picked him up after the accident corroborating the testimony of his father. The defendant points out that the minor contradicts himself in his testimony in that the

roadway in question was twenty-five (25) feet wide and that if the boy was only three (3) feet from the truck when struck, he could not have been nearer the side of the street where his home was located, since the truck was parked near the curb opposite his home. However, if the plaintiff makes contradictory statements of the occurrence he must be confronted by the contradictions in order to take advantage of them. If the plaintiff makes contradictory statements, one of which permits him to go to the jury and one does not, it is for the jury to reconcile the conflicting statements. *Black v. Philadelphia Rapid Transit Co.*, 239 Pa. 463, 466, 86 Atl. 1066 (1913). See also, *Wolansky v. Lawson*, 389 Pa. 477, 479, 133 A. 2d 843 (1957).

Defendant contends that the trial court abused its discretion in permitting the minor plaintiff to testify. The court does not indicate that this had anything to do with the denial of the motion to remove the nonsuit.

In the case of *Rosche v. McCoy*, 397 Pa. 615, 156 A. 2d 307 (1959), the Supreme Court held that a trial court abused its discretion in allowing a seven-year-old to testify concerning events that took place when she was four years of age. The Supreme Court through Mr. Justice McBride said at page 620-21:

"The question of competency of persons said to be mentally immature due to infancy is to be determined in the discretion of the trial judge after an inquiry as to mental maturity once the fact of infancy appears on the record or is obvious to the judge. This discretion, however, is not absolute but legal. Nevertheless, it will not be reversed in the absence of abuse.

". . . There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to

speak the truth. These first two considerations are in some instances easily answered where a 7 year old witness is called upon to testify as to a very recent event, particularly where the testimony covers a simple and uncomplicated fact. The situation, however, is not the same where a 7 year old witness is called upon to testify what that witness saw when she was 4 years of age."

In *Commonwealth v. Rimmel*, 221 Pa. Superior Ct. 84, 289 A. 2d 116 (1972), our Court reversed a judgment of sentence and granted a new trial where the convictions were based on the testimony of two minor witnesses. However, this decision was based on the fact that we determined that the minors in question did not have "a consciousness of the duty to speak the truth", as set forth in the requirements of *Rosche,* supra. We held that the: ". . . infant witnesses in both the voir dire examination and in their testimony after being sworn showed no comprehension of the purpose of an oath and the Divine punishment it implied." While in the instant case, there is no question that the minor clearly understood the obligation of the oath.

In *Commonwealth v. Fox*, 445 Pa. 76, 282 A. 2d 341 (1971), it was held that a seven-year-old witness was competent to testify in a murder case. The Supreme Court speaking through Mr. Justice ROBERTS said at pp. 80-81:

"We also there (in Rosche) recognized the conflicting policy considerations confronting courts attempting to determine a child's ability to testify: '. . . One is that a party should not be denied justice because reliance necessarily must be placed upon the testimony of a child of tender years. But, on the other hand, experience has informed us that children are peculiarly susceptible to the world of make-believe and of suggestions. Care must be exercised to keep the balance true as between these conflicting claims. So it is that much must

be left to the discretion of the trial judge who hears and sees the witness.'

"The record clearly supports the trial court's determination of Karen's competency. She gave responsive and clear answers, and she initially indicated explicitly that she knew the meaning of the oath and that she would be 'in trouble' if she did not tell the truth. The trial court acted well within the permissible limits of its discretion in personally conducting the competency examination."

It should be remembered also that *Rimmel* and *Fox*, supra, were criminal cases while *Rosche*, supra, and the instant case are trespass actions in which negligence was the issue.

In the instant case also, there was no question that the minor son, at age ten, did meet requirements (1) and (3) set forth in *Rosche*, supra. This is clearly demonstrated in the trial judge's questions directed to the boy in order to determine competence and the boy's answers to the questions. However, whether the boy at age four had the mental capacity to observe the occurrences and remember them is a closer question. We, of course, must determine if the admission of his testimony was an abuse of discretion. Competency of a witness is the rule and incompetency the exception.

There is quite a distinction between the child in *Rosche*, supra, and the child in this case. In the former, the child was a witness to an accident. While in the instant case, the child was the victim of the accident and had much more reason to have the incident indelibly fixed in his mind.

The case in *Rosche* was a complicated one concerning an automobile-pedestrian accident in which the minor was not involved. She indicated a lack of memory concerning the facts shortly before and after the accident and testified as to the details of the accident. While the minor in the instant case remembered occur-

rences and significant events which occurred near the time of the accident as well as the facts of the accident. He was testifying to his experience rather than just what he saw.

The boy's testimony was to the effect that he had asked his father for money to purchase ice cream from a passing truck. He took the money, approached the street, looking both ways for traffic and observing no oncoming traffic, crossed the street toward the ice cream truck and when he was three feet away from the truck, was struck by the defendant's vehicle. He also testified on cross-examination to being close to his home curb which raised the contradiction complained of by the defendant.

The boy also testified that he remembered the ice cream truck and described it as to type and color. He went on to say that he was not unconscious and that his neighbor picked him up after the accident so that he corroborated his father's testimony. He testified that: "Mr. Terachi picked me up and handed me to my aunt. My aunt handed me to my father and my father gave me back to my aunt." He testified that he walked to the truck and that he did not come from between two parked cars. The father testified there were only two vehicles in the vicinity of the accident, i.e., the truck parked at the north curb and the defendant's car. Under the circumstances of this case, we feel that it can be distinguished from *Rosche*, supra, and that the minor child met all the requirements of that case and the admission of the testimony was not an abuse of discretion.

The question before us is whether looking at the evidence in the light most favorable to the plaintiff, it can be found or inferred from the testimony of the witnesses that the defendant's car was on the wrong side of the street at the time of the accident. The boy was picked up in front of the defendant's car and was

struck three (3) feet from the ice cream truck on the north side of the street. The defendant's statement was to the effect that he was driving to his garage to wash his car when he struck the minor child. The physical facts as shown in the plan required him to make a left-hand turn to get into the lane if he were traveling east.

A jury could infer from these facts that the defendant was driving the car on the wrong side of the road in an easterly direction and attempted to make a left-hand turn into the driveway to the garage and in so doing had crossed into the west-bound lane of traffic and negligently struck the plaintiff. The conflict of testimony of the minor plaintiff can also be reconciled by a jury.

The compulsory nonsuit is stricken and the matter remanded to the court below for a new trial.

HOFFMAN, J., concurs in the result.