Agostino, Appellant, *v.* Rockwell Manufacturing Company et al.

436

Argued November 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James R. Silvis,* with him *O'Connell, Silvis & Godlewski,* for appellant.

*Christ C. Walthour, Jr.,* and *Patrick R. Riley,* with them *Michael P. Yeager,* and *Kunkle, Walthour and Garland,* and *Costello & Berk,* for appellees.

OPINION BY SPAETH, J., September 22, 1975:

This appeal is from an order denying appellant's motion to remove a compulsory nonsuit. The action was initiated in trespass and assumpsit, but before trial appellant elected to proceed solely on the theory of strict liability enunciated in §402A of the Restatement (Second) of Torts.

The Act of March 11, 1875, P.L. 6, §1, as amended June 3, 1971, P.L. 118, No. 6, §1 (§509(a)(25)), 12 P.S. §645, allows an order for compulsory nonsuit to be entered when plaintiff's evidence is insufficient to maintain his cause of action. It provides:

> "Whenever the defendant, upon the trial of a cause in any court of common pleas of this commonwealth, shall offer no evidence, it shall be lawful for the judge presiding at the trial to order a judgment of nonsuit to be entered, if, in his opinion, the plaintiff shall have given no such evidence as in law is sufficient to maintain the action, with leave, nevertheless, to move the court in banc to set aside such judgment of nonsuit."

Once a compulsory nonsuit has been entered, the plaintiff may not commence a second action upon the same cause

438

of action. Pa. R.C.P. 231(b). In determining the propriety of the entry of a compulsory nonsuit, this court must regard the evidence in the light most favorable to the appellant, and he must be accorded the benefit of all reasonable inferences arising from the evidence. *Forry v. Gulf Oil Corp.*, 428 Pa. 334, 237 A.2d 593 (1968); *DeLio v. Hamilton*, 227 Pa. Superior Ct. 581, 308 A.2d 607 (1973); *Jones v. Spidle*, 213 Pa. Superior Ct. 81, 245 A.2d 677 (1968), appeal after remand, 446 Pa. 103, 286 A.2d 366 (1971).

So regarded, appellant's testimony may be summarized as follows. During the month of November, 1969, appellant purchased from appellee Greensburg Lumber & Mill Company a power saw manufactured by appellee Rockwell Manufacturing Company. At the time, appellant was employed as a manager of the Modern Tea Room in Greensburg, Pennsylvania, and his duties included remodeling the restaurant building. Appellant was familiar with power saws since he had used them for approximately twenty-five years in various carpentry jobs. The Rockwell saw that appellant had purchased was constructed so that after the completion of a cut, a telescopic guard would be automatically released from the housing, covering the blade and thereby preventing the user from being cut. On December 16, 1969, appellant went to the restaurant to finish the work he had begun on a second floor wall. He had owned the saw for approximately one month and had used it approximately ten times; no one else had used it. On this specific day, he was going to use the saw to cut 2" by 8" boards. He plugged in the saw, checked the telescopic guard to make sure it was operating properly, and cut two boards. After each cut he put the saw on a bench behind him. On the third cut, appellant finished severing the board, but as he attempted to put the saw on the rear bench the blade grabbed his trousers and cut deeply into his thigh. He dropped the saw on the floor. As he moved away to keep the saw

(which was still running) from cutting his feet, he noticed that the telescopic guard was not covering the blade but was "jammed" in the housing.

In addition to his own testimony, appellant introduced the testimony of two medical doctors and a chiropractor who testified concerning the extent of appellant's injury. Appellant also attempted to use an expert witness, Emerson Venable, who had examined the saw and was prepared to testify as to the defects in its design and manufacture. The trial judge, however, sustained appellees' objections and refused to let Venable testify.

At the conclusion of appellant's case, each appellee moved for compulsory nonsuit, and the trial judge granted the motions. Appellant then filed a motion to remove the nonsuit and a motion for a new trial. The court en banc denied both motions, and this appeal followed. Appellant claims that the entry of the nonsuit was improper, and that the trial judge erred in refusing to permit the proposed expert witness to testify.

In *Webb v. Zern,* 422 Pa. 424, 427, 220 A.2d 853 (1966), our Supreme Court expressly adopted Section 402A of the Restatement (Second) of Torts, which provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller."

Here, as has been mentioned, appellant stated that he bought the saw from appellee Greensburg Lumber & Mill Company and that appellee Rockwell Manufacturing Company made the saw. There was therefore sufficient evidence to establish that appellees were "engaged in the business of selling" the saw. To maintain his action under §402A, however, appellant also had to show that the saw had a defect that was unreasonably dangerous to the user, that the defect existed when the saw left Rockwell's plant, and that there was a causal connection between the defect and appellant's injury.[1] See *Forry v. Gulf Oil Corp., supra* at 340, 237 A.2d at 597; *Webb v. Zern, supra; Magnuson v. Rupp Manufacturing, Inc.,* 285 Minn. 32, 39-40, 171 N.W. 2d 201, 206 (1969).

## I

Appellees argue that there was insufficient evidence to allow the jury to infer that a defect existed because the record does not contain any evidence establishing a specific defect. If this were a negligence suit, that absence would be fatal to appellant's case, for in a negligence suit the plaintiff must connect his injury with a specific defect in the manufacture or design of a product. *MacDougall v. Ford Motor Co.,* 214 Pa. Superior Ct. 384, 387, 257 A.2d 676, 678 (1969), allocatur refused, 215 Pa. Superior Ct. xxxviii. Mere proof that an accident hap-

---

1. Appellees in their oral motion for nonsuit also claimed that appellant's evidence was inadequate with respect to damages for loss of earnings. This contention was not mentioned in the opinion of the lower court, and appellees have not mentioned it in their briefs to us. It is in any case without merit, since a failure to prove one element of damages would not preclude recovery of other elements, as for example medical expenses, pain and suffering, provided the evidence were sufficient to show liability.

pened as alleged is not sufficient proof that the defendant was negligent. *Radies v. Reading L.G.S. & Sport Soc.,* 197 Pa. Superior Ct. 509, 513, 178 A.2d 789, 791 (1962). However, in *Greco v. Bucciconi Engineering Co., Inc.,* 283 F. Supp. 978 (W.D. Pa. 1967), *aff'd,* 407 F.2d 87 (3d Cir. 1969), the district court in construing Pennsylvania law held that §402A actions are governed by the evidentiary standards of warranty law, not by the evidentiary standards of negligence law. There, a steel company employee was injured because a magnetic sheet piler malfunctioned. At trial he did not attempt to trace this malfunction to any particular part of the piler, nor did he try by expert testimony otherwise to offer a theory for the malfunction. The issue was simply whether "the mere occurrence of the malfunction by machinery evidence[s] a 'defective condition' within the meaning of Section 402A of the Restatement." *Id.* at 981. The district court held that the plaintiff's evidence was sufficient to maintain his action because under warranty law proof that the product functioned improperly in the absence of abnormal use and reasonable secondary causes establishes circumstantially that there was a defective condition.

In *MacDougall v. Ford Motor Co., supra,* we expressly held that *Greco* was a correct statement of Pennsylvania law. In *MacDougall,* a 1962 Comet station wagon owned and driven by the plaintiff was involved in an accident on the Pennsylvania Turnpike. The car had been purchased one month earlier, had been driven 143 miles, but had never been driven at speeds in excess of 30 miles per hour. On the day of the accident, the plaintiff tried to drive at 50 miles per hour, but steering became so difficult that she lost control of the car and crashed. Her experts could not pinpoint the specific mechanical defect causing the accident. We nevertheless found the evidence sufficient to maintain her §402A action: "Proof of the specific defect in construction or design causing

a mechanical malfunction is not an essential element in establishing breach of warranty [and therefore in maintaining §402A actions]. 'When machinery "malfunctions", it obviously lacks fitness regardless of the cause of the malfunction. Under the theory of warranty, the "sin" is the lack of fitness as evidenced by the malfunction itself rather than some specific dereliction by the manufacturer in constructing or designing the machinery.' *Greco v. Bucciconi Engineering Co., supra,* at 982. *Cf. Frantz Equipment Co. v. The Leo Butler Co.,* 370 Pa. 459, 88 A.2d 702 (1952)." *Id.* at 389, 257 A.2d at 679.

This rule is now settled. In *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 242 A.2d 231 (1968), the plaintiff sought to recover under §402A for injuries caused by an exploding beer bottle. While holding that expert testimony to establish the cause of the bottle's failure was proper, the Supreme Court indicated that it was not necessary. "Both plaintiff and Leon Dorsey testified that the bottle exploded spontaneously. Their testimony alone, given the fact that an explosion was not a physical impossibility, was sufficient to make the issue a jury question." *Id.* at 184-185, 242 A.2d at 235. In *Burchill v. Kearney-National Corporation, Inc. v. Pennsylvania Electric Company,* 468 F.2d 384 (3d Cir. 1972), a lineman was injured when a pole broke and he was thrown to the ground. He claimed in his §402A suit that the pole broke because a fitting gave way under stress that was within the anticipated normal range. There was little direct evidence produced to support this theory. On appeal it was held, however, that the lower court should have allowed the case to go to the jury. The court recognized that under Pennsylvania law "[t]he occurrence of a malfunction in the absence of abnormal use and reasonable secondary causes is evidence of a defective condition within the meaning of §402A." *Id.* at 387. *See also Wojciechowski v. Long-Airdox Div. of Marmon Group, Inc.,* 488 F.2d 1111 (3d Cir. 1973) ; *Forry*

*v. Gulf Oil Corp., supra; D'Antona v. Hampton Grinding Wheel Co., Inc.,* 225 Pa. Superior Ct. 120, 310 A.2d 307 (1973).

In the present case, it will be recalled, appellant testified that the telescopic guard on the saw would be automatically released, covering the blade and thereby preventing the user from being cut, that the saw functioned properly on the first two cuts, but that on the third it did not.

> "A. . . . On the third piece I was cutting, when I was setting the guard, it didn't come back and got a hold of my trouser and cut through to my leg and I let it drop on the floor.
>
> Q. Let's go through this with some detail. What do you mean the telescopic guard did not come back? Where was it?
>
> A. In that position (indicating). It was jammed."

Later, on cross-examination, appellant stated that he did not actually notice where the guard was at the very moment his leg was injured, but that he assumed it was still in the housing because his leg was cut and the guard was "jammed" in the housing immediately after the accident.

The lower court in its opinion and appellees in their briefs state that it cannot be inferred from this testimony that there was a malfunction at all. In *Bialek v. Pittsburgh Brewing Co., supra,* however, the Supreme Court stated that testimony of the plaintiff and another witness that an unopened beer bottle exploded spontaneously was enough to make the issue of the existence of a defect a jury question. The court therefore did not require the plaintiff to see the flaw in the bottle either before or at the time of the explosion, and we shall make no such requirement here. Because a malfunction did not occur on the first or second cut does not mean it did not occur on the third; and it would be most unreasonble to bar recovery because appellant did not observe the location

of the guard at the moment his leg was being lacerated. The jury could have properly inferred from appellant's testimony that the guard did not function properly. Since there was no evidence of abnormal use or secondary causes, this evidence was sufficient, under *Greco, Mac-Dougall,* and their progeny, to establish a "defective condition unreasonably dangerous to the user."

## II

The next question is whether the evidence was such that the jury could have found that the defective condition existed at the time of the sale. The lower court held the jury could not have so found and cited *Stein v. General Motors Corporation,* 58 D & C 2d 193 (1972), *aff'd,* 222 Pa. Superior Ct. 751, 295 A.2d 111 (1972).

In *Stein,* the plaintiff claimed that his automobile accident was cause by a defective steering mechanism. However, the trial judge granted the defendant's motion for a compulsory nonsuit, and this court affirmed *per curiam.* Throughout its opinion the lower court emphasized that the car was twenty-six months old, had been driven 17,700 miles, and had passed through at least one repair shop before the accident. The court reasoned from these facts that if there were a defect in the automobile, "the likelihood that such defect grew out of mishandling ... is much more compelling than that it grew out of any original defect at the time of manufacture or, behind that, of design." *Id.* at 209. The court therefore held that the plaintiff had not met "his burden to prove that the vehicle was in a defective condition at the time it left the hands of the seller." *Id.*

The court, however, was careful not to hold that §402A only applies to products that manifested a defect immediately after purchase. In fact, it expressly noted that in several appellate court decisions §402A was held to be applicable even though the product was not brand new.

In *Ferraro v. Ford Motor Company*, 423 Pa. 324, 223 A.2d 746 (1966), our Supreme Court allowed the plaintiff to recover under §402A even though the car that was allegedly defective had been used for over two months and had been driven 500 miles before the accident occurred. In *Berkebile v. Brantley Helicopter Corp.*, 219 Pa. Superior Ct. 479, 281 A.2d 707 (1971), allocatur refused, 219 Pa. Superior Ct. xxxvii, *reheard*, 225 Pa. Superior Ct. 349, 311 A.2d 140 (1973), *aff'd*, 462 Pa. 83, 337 A.2d 893 (1975), §402A was held to be apposite to a suit concerning the defective design of a helicopter, even though the owner had taken delivery six months and 198.5 air hours before the defect became manifest. Similarly, in *MacDougall v. Ford Motor Co.*, supra, recovery was allowed for injuries caused by a defective steering mechanism that became apparent approximately one month after purchase. The court in *Stein* explained that "these cases reasonably and logically call[ed] for the application of the 402A principle. In most of them, the products were new and the injured user or buyer was one who would have every reason to believe, along with an objective observer, that the product in question left the manufacturer and seller in a condition 'unreasonably dangerous to the user.' There would be every reason to believe that the product underwent no substantial change between the times of manufacture or assembly and of sale, and the time of the accident." *Id.* at 206.

In the present case, it will be recalled, appellant testified that the saw was only a month old, had been used approximately ten times, and by no one else. He also testified that the saw was completely assembled when he bought it, and that he had not tampered with the guard nor had he sent the saw out to a repair shop. This case, therefore, is not like *Stein*, where ordinary wear and tear or faulty repair could have caused the defect. Rather, it is like *Ferraro, Berkebile,* and *MacDougall.*

## III

The last question is whether there was sufficient evidence for a jury to find that the defect caused appellant's injury. According to appellant's testimony, the saw was designed so that the telescopic guard would cover the blade of the saw when the cut was complete. He stated:

"Q. If the telescopic guard is working properly—

A. It is impossible for you to get cut.

. . .

Q. If the telescopic blade guard is covering the blade, can you cut your leg?

A. No way."

It is clear that the jury could have found from this testimony and from its own examination of the saw that appellant's injury would not have occurred if the saw had not been defective.

In sum, we conclude that there was sufficient evidence for the jury to find that appellees were engaged in the business of selling the power saw, that there was a defect in the saw which made it unreasonably dangerous to the user, that the defect existed at the time of its sale, and that there was a causal connection between the defect and appellant's injury. The compulsory nonsuit should, therefore, not have been entered.[2]

The judgment of nonsuit is reversed, and the case is remanded for a new trial.

------

2. This conclusion makes it unnecessary to consider appellant's claim that the trial judge erred in refusing to permit appellant's expert witness Venable to testify.