OPINION OF THE COURT
COWEN, Circuit Judge.
Edith J. Parks (Mrs. Parks) appeals from the April 1, 1996, order of the United States District Court for the Western District of Pennsylvania denying her a new trial in a strict products liability tort action. She asserts that the district court erred in instructing the jury as to causation and contributory negligence, and in failing to take sufficient steps to ensure that defendants complied with discovery orders. We agree and will reverse and remand for a new trial.
I.
Mrs. Parks alleges that defective visibility features on AlliedSignal’s Gradall G-600 excavating machine caused her husband’s death. Leslie Parks (Mr. Parks) was a general laborer for Allegheny Sand, Inc. Mrs. Parks is his widow. Mr. Parks was killed while working with the Gradall machine, an excavator with two separate cabs that is used for breaking boulders into smaller pieces. One cab is in the front, as in an ordinary truck, and is occupied by the driver of the vehicle. The second cab, at the rear, is attached to and controls the excavating arm.
The second cab, the arm, and the arm’s counterweight are all in one line. The counterweight keeps the machine from tipping when the arm is used off-center. When the second cab operator moves the arm as if tracing a circle, the machine’s entire arm (including the counterweight) swings around a central point. The operator sits in the middle, swinging along with the arm. The operator’s seat faces the excavating arm, and the counterweight swings out behind his back. The cab has no mirrors, so the operator has no view to the area behind him and only limited side visibility while operating the controls.
On the morning of the accident, Mr. Parks and two co-workers, at the direction of their supervisor, endeavored to break some blocks of carbon. The machine’s regular shovel had been replaced by Mr. Parks’ employer with a chipper attachment used for carbon-breaking. From outside the machine, Mr. Parks directed his co-workers, who occupied the two cabs and controlled the truck. Alan McMunn, sitting in the front cab, drove the machine to the back of a shed where the carbon was stored. William Kline, in the second cab, operated the excavator arm and boom.
Mr. Parks walked to the back of the shed. As McMunn pulled the machine into the shed, Mr. Parks directed him. Mr. Parks told Kline to swing the boom to the left. The instruction sent the excavating arm’s counterweight on a collision course with Mr. Parks. Mr. Parks was pressed between the *1330 counterweight and the wall, causing his death.
Mrs. Parks sought to hold AUiedSignal liable on the theory that it failed to install a rear-view mirror or alternative safety device on the Gradall machine. She alleged that this omission made the product “unreasonably dangerous” because it caused the vision of the second cab’s operator to be needlessly circumscribed. Over objections by Mrs. Parks, the district court admitted evidence concerning Mr. Parks’ conduct immediately prior to his death. The district court refused to charge the jury that Mr. Parks’ conduct could be viewed as a legal cause of his death only if it were unforeseeable.
The jury found that the product was indeed defective, but nevertheless returned a verdict for the manufacturer. The verdict was presumably based on the finding of the jury that the defect was not “a substantial factor” in causing the death. Parks’ motion for a new trial was denied. Mrs. Parks argues that the district court erred when it failed to charge the jury that if Mr. Parks’ conduct were foreseeable, such conduct could not have broken any chain of causation linking the alleged defect to his death.
In addition, during the trial Mrs. Parks sought to compel disclosure of information that she had requested during pre-trial discovery, but which allegedly had not been divulged. That information concerned other accidents involving similar machines and the placement of mirrors on those machines. The district court granted the motion to compel,[1] but the record on appeal raises serious questions as to whether defendants properly complied with discovery orders.
II.
The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332 (1993), diversity of citizenship. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291(1993). Concerning the propriety of the charge delivered to the jury, our standard of review is plenary, as we are reviewing whether the district court erred in formulating a legal precept. See Hook v. Ernst & Young, 28 F.3d 366, 370 (3d Cir.1994) (citing Griffiths v. CIGNA Corp., 988 F.2d 457, 462 (3d Cir.1993) (citing Rotondo v. Keene Corp, 956 F.2d 436, 438 (3d Cir.1992))). We review the supervision of discovery by the district court for abuse of discretion. See United States v. 27.93 Acres of Land, 924 F.2d 506, 510 (3d Cir.1991); Marroquin-Manriquez v. INS, 699 F.2d 129, 134 (3d Cir.1983).
III.
We initially review two key questions raised on this appeal. First, what must a plaintiff show in order to recover in a strict products liability tort action under Pennsylvania law, which incorporates section 402A of the Restatement (Second) of Torts? Second, having admitted evidence of a decedent’s conduct immediately before an accident, what must a district court do to fulfill its obligation to explain to a jury the appropriate use of such information?
A. Section 402A
Section 402A, which was adopted by the Supreme Court of Pennsylvania in Webb v. Zern, 422 Pa. 424, 220 A.2d 853, 854 (1966), “imposes strict liability for injuries caused by defective product design.”[2] Pacheco v. Coats Co., Inc., 26 F.3d 418, 421 (3d Cir.1994) (citing Lewis v. Coffing Hoist Div., Duff- *1331 Norton Co., 515 Pa. 334, 528 A.2d 590, 592 (1987)). See also Phillips v. A-Best Products Co., 542 Pa. 124, 665 A.2d 1167, 1170 (1995) (acknowledging Pennsylvania’s adoption of section 402A). In the words of the Pennsylvania Supreme Court, “Section 402A ... requires only proof that a product was sold in a defective condition unreasonably dangerous to the user or consumer, and that the defect was the proximate cause of plaintiffs injuries.” Walton v. Avco Corp., 530 Pa. 568, 610 A.2d 454, 458 (1992). “Manufacturers are held as guarantors upon a finding of defect and causation.” Id., 610 A.2d at 462.
In order to prevail in a section 402A action, the plaintiff must show that a product is “unreasonably dangerous to intended users for its intended use.” Pacheco, 26 F.3d at 422 (emphasis omitted). In interpreting the phrase “intended use”, we have held that “the intended use of a product ‘includes all those [uses] which are reasonably foreseeable to the seller.’ ” Id. (quoting Sheldon v. West Bend Equip. Corp., 718 F.2d 603, 608 (3d Cir.1983) (alteration added)). Under the strict liability test, therefore, a defendant is liable for causing injury to a person who was behaving in a foreseeable manner. This principle is reflected in the jury instruction recommended by Pennsylvania’s Committee for Proposed Standard Jury Instructions, which the Pennsylvania Supreme Court endorsed in Azzarello v. Black Bros. Co., Inc.:
The product must ... be provided with every element necessary to make it safe for [its intended] use, and without any condition that makes it unsafe for [it is intended] use. If you find that the product, at the time it left the defendant’s control, lacked any element necessary to make it safe for [its intended] use or contained any condition that made it unsafe for [its intended] use, then the product was defective, and the defendant is liable for all harm caused by such defect.
480 Pa. 547, 391 A.2d 1020, 1027 n. 12 (1978). See also Lewis v. Coffing Hoist Div., Duff-Norton Co., 515 Pa. 334, 528 A.2d 590, 593 (1987).
1. Foreseeability
Section 402A liability cannot be found if, at the time of the accident, the product was being used in an unforeseeable manner. The requirement of foreseeability therefore enables strict liability to exist without transforming manufacturers into absolute insurers of their products. The importance of this rule has been repeatedly demonstrated in the courts. In Sheldon, 718 F.2d at 608, we held that “the district court[ ] [should not] fail[ ] to instruct the jury to the effect that the intended use of a product includes any use which is reasonably foreseeable to the seller.” See also Schell v. AMF, Inc., 567 F.2d 1259, 1263 (3d Cir.1977) (quoting Kuisis v. Baldwin-Lima-Hamilton Corp., 457 Pa. 321, 319 A.2d 914, 921 n. 13 (1974)) (“whether a particular use of a product is abnormal depends on whether the use was reasonably foreseeable by the seller.”). In Eck v. Powermatic Houdaille, 364 Pa.Super. 178, 527 A.2d 1012, 1019 (1987), the Superior Court of Pennsylvania reversed a trial court on the grounds that “the established rule of law ... requires consideration of ‘foreseeability’ ” in the jury instruction in a strict products liability action.
The concept of foreseeability is relevant to strict products liability cases for the purpose of determining whether the use that was made of a product at the time of the accident was one that the manufacturer could have reasonably anticipated. See Schell, 567 F.2d at 1263. In order to prevail in a section 402A products liability action, then, the plaintiff must show that: (1) a product defect (2) caused a harm (3) while the product was being used in a foreseeable manner.
As the Pennsylvania Superior Court held in Sweitzer v. Dempster Sys., 372 Pa.Super. 449, 539 A.2d 880, 882 (1988)(eiting Salvador v. Atlantic Steel Boiler Co., 457 Pa. 24, 319 A.2d 903, 907 (1974)(emphasis added)):
The role of foreseeability in a product liability ease is consistent with the broad and sound social policy underlying § 402A; that is, as between an innocent user of a product and a manufacturer or seller who is engaged in the business of manufacturing or selling a product, risk of loss for injuries resulting from the use of a defec *1332 tive product shall be borne by the manufacturer and/or seller.
Of course, a defect may produce manufacturer liability in a given case only when the harm caused is of the type threatened by the defect.
2. “Substantial Factor” Causation as it Relates to Foreseeability
In determining how the elements of foreseeability and causation may properly be demonstrated in the instant case, we are again guided by Pennsylvania law. When addressing causation, Pennsylvania has rejected the “but for” test and adopted the “substantial factor” test as embodied in the Restatement (Second) of Torts § 431, which provides:
The actor’s negligent conduct is a legal cause of harm to another if: (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence resulted in the harm.
See Trude v. Martin, 442 Pa.Super. 614, 660 A.2d 626, 632 (1995) (citing Whitner v. Von Hintz, 437 Pa. 448, 263 A.2d 889 (1970)).
The courts of other states following the Restatement have defined a “substantial factor” as one that is not “merely negligible.” ACandS v. Asner, 344 Md. 155, 686 A.2d 250, 260 (1996). “Stated differently, ‘[[liability attaches not only to the dominating cause but also to any cause which constitutes at any event a substantial factor in bringing about the injury.’ ” Dawson v. Bunker Hill Plaza Assocs., 289 N.J.Super. 309, 673 A.2d 847, 853 (App.Div.1996)(quoting Peer v. City of Newark, 71 N.J.Super. 12, 176 A.2d 249 (App.Div.1961)(emphasis added)). The substantial factor test has replaced the “but for” causation test in strict liability contexts precisely because in design defect cases it is typically a matter of speculation whether the presence of a safety device would, in a given instance, have actually prevented a harm. See Yukon Equip., Inc. v. Gordon, 660 P.2d 428, 433 (Alaska 1983)(stating that “but for” causation jury instruction was improper in manufacturer’s design defect case), overruled on other grounds, Williford v. L.J. Carr Invs., Inc., 783 P.2d 235 (Alaska 1989).
Our review of Pennsylvania law dictates that a plaintiffs conduct may be introduced to undermine a plaintiffs claim that the defect caused his accident only insofar as the plaintiffs conduct was unforeseeable to the defendant, even where the plaintiff played some part in setting the accident in motion. Evidence concerning a decedent’s possible role in bringing about his or her own death is admissible only to support defendant’s claim that the conduct was so “extraordinary” or “[un]foreseeable” that it would be unjust to hold the defendant liable for the harm. See. e.g., Holloway v. J.B. Sys., Ltd., 609 F.2d 1069, 1074 (3d Cir.1979). When courts admit such testimony, they must elucidate the limited permissible uses of that evidence, as it is highly susceptible to misinterpretation by the jury.
In determining causation, therefore, the task of the jury is not simply to determine whether the plaintiff played a part in causing the accident. Rather, the threshold question is whether the plaintiffs actions were foreseeable. As noted above, the manufacturer is responsible for making the product safe for all foreseeable uses. Decorative Precast Stone Erectors, Inc. v. Bucyrus-Erie Co., 493 F.Supp. 555, 557 (W.D.Pa.1980), aff'd, 642 F.2d 441 (3d Cir.1981),informs us that under Pennsylvania products liability law, if both a manufacturer’s defect and a plaintiffs conduct are found to be proximate causes, the plaintiff will recover unless the defendant meets the burden of proving that plaintiffs conduct was so unforeseeable as to constitute a superseding cause. See infra, Sec. III.A.3. If foreseeable, the jury must find for the plaintiff unless it finds that the defect did not play even a substantial, or more than negligible, role in causing the plaintiffs injury. In Schell, 567 F.2d at 1263 (citing Bartkewich v. Billinger, 432 Pa. 351, 247 A.2d 603, 605 (1968)), we explained that recovery is allowed where the absence of a safety device caused an injury of the type *1333 that could be expected from the foreseeable use of the product.[3]
The element of causation, while required, is not the primary focus of section 402A cases. Causation may be shown by process of elimination or circumstantial evidence. In cases dealing with product malfunction, for instance, Pennsylvania appellate courts have consistently reversed trial courts for not sending to the jury eases in which causation had not been directly demonstrated. See, e.g., Ducko v. Chrysler Motors Corp., 433 Pa.Super. 47, 639 A.2d 1204 (1994); Agostino v. Rockwell Mfg. Co., 236 Pa.Super. 434, 345 A.2d 735 (1975); Burchill v. Kearney-Nat’l Corp. v. Pennsylvania Elec. Co., 468 F.2d 384 (3d Cir.1972). Similarly, in MacDougall v. Ford Motor Co., 214 Pa.Super. 384, 257 A.2d 676, 680 (1969) overruled on other grounds, REM Coal Co. v. Clark Equip. Co., 386 Pa.Super. 401, 563 A.2d 128, 134 (1989),[4] the Pennsylvania Superior Court stated:
The evidentiary requirements of negligence law demand proof that injury is proximately caused by a specific defect in design or construction because liability hinges upon whether the accident could have been avoided by the exercise of reasonable care. In contrast, the concern of both section 402A and warranty law is with the fitness of the product.
The de-emphasis of causation is a natural corollary of the distinction between negligence and strict products liability. In strict products liability, the focus is on whether the product was sold in an unreasonably dangerous condition for reasonably foreseeable uses. See Carpenter v. Koehring Co., 391 F.Supp. 206, 210-11 (E.D.Pa.1975), aff'd, 527 F.2d 644 (3d Cir.1976). In negligence, by contrast, the focus is on whether a duty of care was breached. See Kuisis, 319 A.2d at 920. In either negligence or strict products liability, proximate cause defines “such limits on recovery as are economically and socially desirable.” Klages v. General Ordnance Equip. Corp., 240 Pa.Super. 356, 367 A.2d 304, 313 (1976). In the products liability area, Pennsylvania has determined that it is economically and socially desirable to hold manufacturers liable for accidents caused by their defective products, without introducing negligence concepts of comparative fault that would weigh the manufacturer’s negligent conduct against that of the injured product user. See Walton, 610 A.2d at 462. See also infra, See. III.A.4.
3. Superseding or Intervening Cause
The test for what constitutes a superseding cause reflects the de-emphasis of causation in strict products liability litigation. Klages explains that a reasonably foreseeable intervening act cannot “satisfy the requirements of a superseding cause.”[5] 367 A.2d at *1334 313. In a section 402A strict liability tort claim such as that in the instant case, “a negligent intervening act, to reheve defendant of accountability, must be ... ‘so extraordinary as not to have been reasonably foreseeable.’” Eshbach v. W.T. Grant’s and Co., 481 F.2d 940, 945 (3d Cir.1973)(quoting Dorsey v. Yoder Co., 331 F.Supp. 753, 764 (E.D.Pa.1971)(quoting Wilson v. American Chain and Cable Co., 364 F.2d 558, 562 (3d Cir.1966))). Similarly, in Baker v. Outboard Marine Corp., 595 F.2d 176, 182 (3d Cir. 1979), we held that the intervening negligence of a third party could serve as a superseding cause of injuries to shield defendant manufacturer from liability to plaintiff only if it were “so extraordinary as not to have been reasonably foreseeable.” Id. at 182 (quoting Eshbach, 481 F.2d at 945). See also Williford, 783 P.2d at 237 (act may constitute superseding cause only if, in addition to being unforeseeable by defendant, it was highly extraordinary).
In short, even if an intervening but foreseeable action is responsible for the major share of a strict products liability injury, that action cannot ordinarily be held to be the legal cause of the injury. Instead, it is removed from the picture,and liability attaches to the remaining causal actor or actors. Here, if the possibility of a person standing in the path of the Gradall is found to be foreseeable or ordinary, Mr. Parks’ actions cannot legally be viewed as disrupting or otherwise playing a part in the causal chain that culminated in his death.
4. Rejection of Comparative Fault
The above-described approaches to foreseeability, causation, and superseding cause in Pennsylvania strict products liability cases are compelled by Pennsylvania’s rejection of comparative fault. Of particular relevance to the instant case, Walton explained that
[The Pennsylvania Supreme] Court has continually fortified the theoretical dam between the notions of negligence and strict “no fault” liability. It would serve only to muddy the waters to introduce comparative fault into an action based solely on strict liability.
610 A.2d at 462 (citations omitted)(emphasis added). It has been noted by numerous courts that “[t]he Pennsylvania Supreme Court, perhaps more than any other state appellate court in the nation, has been emphatic in divorcing negligence concepts from product-liability doctrine.” Kern v. Nissan Indus. Equip. Co., 801 F.Supp. 1438, 1440 (M.D.Pa.1992)(quoting Conti v. Ford Motor Co., 578 F.Supp. 1429, 1434 (E.D.Pa.1983), rev’d on other grounds, 743 F.2d 195 (3d Cir.1984)).
The Pennsylvania Supreme Court recently explained its reasons for not extending the defense of comparative negligence to a strict products liability action:
Our position is not based solely on the problem of the conceptual confusion that would ensue should negligence and strict liability concepts be commingled, although that concern is not negligible. Rather, we think that the underlying purpose of strict product liability is undermined by introducing negligence concepts into it. Strict product liability is premised on the concept of ... liability for casting a defective product into the stream of commerce.
The deterrent effect of imposing strict product liability standards would be weakened were we to allow actions based upon it to be defeated, or recoveries reduced by negligence concepts.
Kimco Dev. v. Michael D’s Carpet Outlets, 536 Pa. 1, 637 A.2d 603, 606-07 (Pa.1993)(emphasis added).
Similarly, in McCown v. Int’l Harvester Co., 463 Pa. 13, 342 A.2d 381 (1975), the plaintiff, as here, was injured by an industrial vehicle. According to the plaintiff, the machine’s design was defective and caused his injuries. The defendant argued that plaintiff’s contributory negligence should have *1335 been considered either to reduce the plaintiffs permissible recovery or as a defense to liability. The Pennsylvania Supreme Court disagreed, explaining that it would be unwise to “create a system of comparative assessment of damages for 402A actions.” Id., 342 A.2d at 382.
Pennsylvania’s wish to avoid “muddy[ing] the waters” dictates that in discussing causation, the comparative fault of the parties involved is immaterial. Rather, the focus is again on whether the activity engaged in by the plaintiff was foreseeable. If foreseeable, and the defect is found to have been a cause of the injury, the plaintiffs actions cannot preclude defendant liability. Any other approach would require weighing negligence or lack of care, which would inject comparative fault into strict products liability.
In Dillinger v. Caterpillar, Inc., 959 F.2d 430 (3d Cir.1992), which undertook an extensive survey of Pennsylvania products liability law, the trial court’s final charge expressly permitted the jury to consider plaintiffs alleged negligence when determining whether defendant’s product caused his injuries: “The defendant denies that it is liable for plaintiffs injuries. Defendant contends that the 773 truck was not defectively designed, and that any injuries sustained by plaintiff were caused by the acts of plaintiff himself.” 959 F.2d at 440. In Dillinger, we reversed, disapproving- this jury charge because we found that it “effectively framed the issue as one of contributory negligence____” Id. at 440 n. 18. The defendant “point[ed] to a line of cases which suggest[ ] that, although evidence of a plaintiffs contributory negligence is ordinarily inadmissible, it is admissible to rebut the ‘causation’ prong of a products liability claim.” Id. at 441.
We rejected the defendant’s arguments and found the line of cases cited to be “in some instances [irreconcilable] with the Pennsylvania Supreme Court’s declarations on this subject.” Id. at 441. We also distinguished that line of cases from the case then before us, by explaining that in the cases cited by the defendant, “the plaintiffs conduct [had] actively contributed to the cause of the accident, [rather than] merely [failing] to prevent the accident attributable to the defect.’ Id. at 442. We reasoned in Dillinger that the evidence of the plaintiffs conduct was especially inadmissible when the conduct was “merely insufficient to prevent the accident attributable to the defect.” Id. In Dillinger, therefore, we left open the question of whether a different result would obtain where the plaintiffs conduct had been more than “merely insufficient to prevent the accident attributable to the defect.” Id.
The argument of the defense in the instant case — that a plaintiffs foreseeable conduct can break the causal chain set in motion by a product defect — was championed in Foley v. Clark Equip. Co., 361 Pa.Super. 599, 523 A.2d 379 (1987). But as we stated in Dillinger and reiterate today, we believe that case is inconsistent with Pennsylvania strict products liability law. Dillinger, 959 F.2d at 443. In Foley, the Superior -Court endorsed the admission of evidence of a plaintiffs contributory negligence in a section 402A suit. There, as here, the plaintiff was struck by an industrial vehicle when the operator failed to notice him. The plaintiff alleged that the manufacturer had defectively designed the vehicle in that, inter alia, the driver’s view was improperly obstructed. The Superior court stated that “negligent] conduct is admissible where it is relevant to establish causation[,]” and plaintiffs allegedly negligent behavior is admissible for this purpose. Foley, 523 A.2d at 393. Nonetheless, we explained in Dillinger that
there is no meaningful way to reconcile the view that a plaintiffs negligence of the type involved in Foley should be admitted to undercut causation with the Supreme Court’s prohibition of the introduction of a plaintiffs negligence to defeat liability____ In Foley, the plaintiff did not observe the oncoming forklift and did not move out of its way. Because the driver similarly had not noticed the plaintiff, the driver crashed into him. Although the plaintiff contended that the design of the forklift ... was defective because, in part, ... [of the] obstructed ... view, the court permitted the defendant to introduce evidence of the plaintiffs inattention because the accident could have been avoided if the plaintiff had not acted negligently____ [T]here is no *1336 principled reason to prohibit evidence of the plaintiffs negligence in McCown but permit evidence of an almost identical character in Foley.
959 F.2d at 443-44. The fact that the plaintiff in Foley could have moved out of the way does not mean that Foley caused the accident, and that the driver (who also could have moved out of the way) did not cause the accident. Obstructed vision was a proximate cause of plaintiffs injuries in Foley; no meaningful distinction can be made between the operator’s and the plaintiffs roles in causing the accident.
In Dillinger, although we did not endorse as dispositive the distinction between plaintiffs who “set [their] accident[s] in motion” and those who merely fail to stop them, we limited our holding to cases in which the plaintiff merely failed to stop his injury from being caused by a product defect. 959 F.2d at 444. This distinction is somewhat artificial, as plaintiffs conduct will often be susceptible to characterization in either category. But assuming that in directing the operator to swing the boom, Mr. Parks “set the accident in motion,” we will now address the question of the permissible uses of evidence of plaintiffs conduct where such conduct has actively “set the accident in motion.” Id.
Based on the foregoing discussion of the permissible uses of plaintiffs conduct evidence in section 402A actions, we find that the evidence of Mr. Parks’ actions preceding his death were appropriate for the jury to consider only if it first decided that those actions were not reasonably foreseeable or were otherwise extraordinary. In failing to put that test to the jury, the district court gave the impression that the jury’s function was to assess the relative contributions of Mr. Parks and the machine’s defect in causing Mr. Parks’ death. As a matter of law, however, strict products liability demands that a plaintiffs foreseeable actions can never displace manufacturer liability when a product defect was a substantial factor in causing the plaintiffs injury.
B. Jury Instructions
When reviewing the sufficiency of jury instructions, our task is to determine whether the “instruction was capable of confusing and thereby misleading the jury.” Bennis v. Gable, 823 F.2d 723, 727 (3d Cir.1987)(quoting United States v. Fischbach & Moore, Inc., 750 F.2d 1183, 1195 (3d Cir. 1984)). Defendants contend that the district court’s instructions were sufficient. But the several pages of sometimes contradictory instructions nowhere state that the jury must not consider the foreseeable or ordinary uses of a product to be a legal cause of an accident, in the sense that foreseeable actions cannot limit a defendant’s liability. The actions of Mr. Parks may be weighed in the causation calculation only if the jury finds them to have been unforeseeable or extraordinary. Omission of this requirement is a clear violation of our holding in Sheldon, 718 F.2d at 608 (“On remand ... the district court should ... charge the jury that the intended use of a product includes all those [uses] which are reasonably foreseeable to the seller.”).
Furthermore, our holding in Baker demonstrates that instructions that contain some characterizations of the law that are accurate may nonetheless become unacceptably tainted by the presence of other, misleading comments:
The district court stated in its opinion denying the new trial motion that its instruction that there may be more than one proximate cause, and that Outboard would be liable if a defect [were] “[a] proximate cause,” adequately informed the jury that it could find [the defendant] to be negligent, and further find her negligence to be ... ‘a’ proximate cause[,] was greatly diminished [by other instructions]..... [T]he case will be remanded for a new trial.
Baker, 595 F.2d 176, 184 (citation omitted).
In Eshbach, we reversed the district court because it failed to either “remove the question of [third-party] negligence entirely from the case or, if it was to be considered, to instruct the jury as to the limits of its application.” 481 F.2d at 945. Strict liability means that an entity is liable for all accidents caused unless they are extraordinary or un *1337 foreseeable, regardless of the level of vigilance demonstrated by others.
In the present case, the district court’s instructions to the jury spread over several pages of the transcript, and the summary of the instructions offered at the end misstated the appropriate analysis. The district court accurately stated,
if you find that a defect in a product was a substantial factor in bringing about harm, the manufacturer and/or seller of the product is responsible for that harm even though you may have found that there were other substantial factors as well as a defect in bringing about the harm.
App. at 414-15. But the district court impermissibly blurred the matter in summarizing the instructions:
If you determine that the defendants manufactured and sold the' excavator lacking an element necessary to make it safe for its intended use and that the lack of this element or elements was a substantial factor in bringing about the incident which resulted in Mr. Parks’ death, then you will find that the defendants are liable to the plaintiff. Otherwise, you will find in favor of the defendants. Likewise, your verdict will be for defendants if you find that either the conduct of the decedent’s employer ... was a legal cause of the accident or if you find that the conduct of Mr. Parks himself or the conduct of his coworkers was also a legal cause of the accident and that the alleged defect was not a legal cause of the accident.

So, in. order to find for the defendants, you must find that the alleged defect was not the legal cause of the accident.

App. at 418-19 (emphasis added). Here, in concluding, the court instructed that the defendant will prevail if “you ... find ... that the alleged defect was not the legal cause of the accident.” The use of “the” rather than “a” indicated that the legal cause must be predominant, or greater than all others, rather than one of several, of . varying (albeit “substantial”) weights.
As noted above, the primary reason that the instruction is fatally erroneous is not its particular wording but that it failed to require the jury to analyze whether Mr. Parks’ actions were unforeseeable or extraordinary. If the jury found that the actions were neither unforeseeable nor extraordinary, it could not have found his actions to be “a legal cause” of his injury. Yet in the above-quoted instruction,.the court indicated that Mr. Parks’ conduct could be a “legal cause of the accident” without explaining that this was true only if the conduct were extraordinary or unforeseeable.
The centrality of foreseeability to Pennsylvania strict products liability law was recently reaffirmed in Childers v. Power Line Equip. Rentals, Inc., 452 Pa.Super. 94, 681 A.2d 201, 208-09 (1996), which held that evidence of an injured party’s conduct was properly barred from a strict liability action because the defendant had failed to demonstrate that the injured party acted in an “unforeseeable,” “reckless,” “extraordinary,” or “outrageous” manner. Here, having admitted evidence of plaintiffs conduct, the district court is obligated firmly to instruct the jury that a plaintiffs comparative fault is no defense to defendant liability, and should not be weighed against the manufacturer’s alleged defect as a potential cause of the injury-
IV.
We now shift our focus from the jury instructions at trial to the discovery process. It appears that defendants did not produce discovery information concerning other similar accidents, of which there were at least five. Defendants concede that all information on these five other accidents came from the investigation conducted by plaintiff, and was not disclosed by defendants in discovery. AlliedSignal introduced specific information about these accidents only at trial, when arguing that evidence of their occurrence should be inadmissible. In addition, the record contains credible evidence that defendants failed to reveal the existence of safety mirrors on comparable machines, including the Gradall 880-C.
These apparent discovery abuses did not become evident until trial. While we make no definitive assessments as to the propriety of defendants’ actions, on retrial the district *1338 court is directed to superintend with care and be confident that defendants properly and adequately disclose materials to which the plaintiff is rightfully entitled. Specifically, discovery orders that the court entered in the original trial,and which apparently were not heeded in full, shall be zealously policed by the district court.
V.
For the reasons stated above, we will reverse the district court’s April 1, 1996, denial of appellants’ motion for a new trial and remand for a new trial.

. App. at 528-531.

. Section 402A provides:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into contractual relations with the seller.
RESTATEMENT (SECOND) OF TORTS § 402A (1965).

.The dissent writes that
The result the majority reaches does not take into account the distinction in Pennsylvania law between treatment of a plaintiff's negligence which is the sole cause of the injury and a plaintiff's negligence which combines with the defect in the product to cause the injury. Negligence of the second kind could defeat the claim only if it is ... unforeseeable.
Dissent at 1342. The instant case is precisely of the second type: the juiy explicitly answered yes to the question, "Was the Gradall excavator defective at the time it was manufactured and sold?” App. at 432. The machine's defect was impaired visibility of precisely the area in which the accident occurred. In accordance with the dissent’s above description, the manufacturer of the defective product in this case should be held liable unless the plaintiff’s actions were unforeseeable. See also the criticism of Foley articulated in Dillinger, discussed infra in this opinion at 1335-36. The dissent points out that the jury responded “no” to the question, "Was the defect in the excavator a substantial factor in bringing about Mr. Parks' death?” Dissent at 1344. But our holding today is that the jury instructions did not properly illuminate, inter alia, what constitutes a substantial factor in a strict products liability action, so this question was not adequately explained to the jury. Having found that the Gradall machine was defective, the jury could have found that the defect was not a substantial factor in causing plaintiff's injury only if it found that had the mirror been in place, the driver would not have glanced into it before backing. Only in this sense does causation remain a factor susceptible to dispute. As this is a strict products liability action, the plaintiff's foreseeable actions remain immaterial to the question of causation.

. We note that the dissent does not address these cases.

. The RESTATEMENT (SECOND) OF TORTS § 440 defines superseding cause as"an act of a third person or other force which by its intervention prevents the actor from being liable for *1334 harm to another which by its antecedent negligence is a substantial factor in bringing about.” Superseding cause (and the related intervening cause, defined in section 441) is a comparative negligence concept, whereby an actor’s liability is diminished due to the injured party’s own negligence. In order to be compatible with strict products liability, the concept must be substantially narrowed to eliminate any foreseeable conduct of the injured party.